## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KETURAH WINTERS and ERIC WINTERS,
husband and wife,
6018 Cobbs Creek Parkway
Philadelphia, PA 19143

                Plaintiffs,

     v.

AKZO NOBEL SURFACE CHEMISTRY,
LLC a/k/a AKZO NOBEL, INC., a/k/a AKZO
NOBEL COATINGS, INC.
150 Columbia Avenue
Reading, PA 19601,

        and

BTX GLOBAL LOGISTICS
561 Main St. #2
Bethlehem, PA 18018,

        and

BILL TAMPANO
c/o BTX GLOBAL LOGISTICS
145 Hook Creek Blvd.
Building C-3
Valley Stream, NY 11581,

        and

WORLDWIDE FLIGHT SERVICES
Philadelphia International Airport
Cargo City Building C6 2nd Floor
Philadelphia, PA 19153,

        and

ROSE ANNE MCGOVERN-RIMBAUT
14016 Rebecca Drive
Philadelphia, PA 19116,

Civil Action No.

and

ABC CORPORATIONS 1-10,

and

JOHN DOES 1-10

Defendants.

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332(a), 1441(b) and 1446, defendant Worldwide Flight Services ("WFS") removes this civil action from the Court of Common Pleas of Philadelphia County because plaintiffs and the properly joined defendants are diverse and the amount in controversy exceeds the jurisdictional minimum.  As a short and plain statement of the grounds for removal, WFS states the following:

## PLAINTIFFS' CLAIMS

1.      Plaintiff Keturah Winters originally commenced an action relating to the incident at issue in this lawsuit in the Court of Common Pleas of Philadelphia County on September 21, 2018, by filing a Complaint (the "Original Complaint").

2.      The Original Complaint stated claims against WFS and defendant Akzo Nobel Surface Chemistry, LLC ("Akzo") only.

3.      On November 9, 2018, WFS, invoking this Court's diversity jurisdiction, removed the Original Complaint to this Court.

4.     The Court assigned the case to the Honorable Jeffrey L. Schmehl under docket number 18-cv-4855.

5.     On November 20, 2018, plaintiff voluntarily dismissed the original lawsuit.  *See* Document No. 5 on Docket 18-cv-4855.

6.     On October 15, 2019, plaintiff and her husband filed a new Complaint relating to the same incident at issue in her Original Complaint in the Court of Common Pleas of Philadelphia County (the "Current Complaint").  A copy of the Current Complaint is attached as Exhibit 1.

7.     Like the Original Complaint, the Current Complaint states claims against WFS and Akzo, but also adds three new parties:  BTX Global Logistics ("BTX"); Bill Tampano, an employee of BTX; and Rose Anne McGovern-Rimbaut, an employee of WFS.

8.     Plaintiffs allege that, on March 24, 2018, while plaintiff Keturah Winters was "working in the course and scope of her employment at the Philadelphia International Airport" an aircraft "directly adjacent" to the location where she was working "was being loaded with fiber drum containers" containing a powder known as Alcosphere Lavender Meadows ("Lavender Meadows").  *See* Current Complaint ¶ 20.

9.     Plaintiffs allege that defendant Akzo manufactured the Lavender Meadows and placed it in the drums.  *See id.* ¶ 29.

10.     Plaintiffs allege that defendant BTX shipped the Lavender Meadows.  *See id.* ¶ 34.

11.     Plaintiffs allege that defendant Bill Tampano, in the course of his employment with BTX, approved the shipment of the Lavender Meadows.  *See id*. ¶ 40.

12.     Plaintiffs allege that WFS prepared the drums for loading into the aircraft. *See id*. ¶ 47.

13.     Plaintiffs allege that defendant Rose Anne McGovern-Rimbaut, in the course of her employment with WFS, failed to properly train or supervise the WFS employees who prepared the drums for loading.  *See id*. ¶ 54.

14.     Plaintiffs allege that one of the drums was punctured as it was loaded into the aircraft, causing Lavender Meadows to spill in the area where Keturah Winters was working. *See id*. ¶¶ 24-25.

15.     Plaintiffs allege that Keturah Winters suffered injuries as a result of exposure to the Lavender Meadows.  *See id*. ¶ 26.

16.     Plaintiff Keturah Winters brings claims for negligence and strict liability against all defendants.

17.     Plaintiff Eric Winters brings a claim for loss of consortium against all defendants.

## DIVERSITY JURISDICTION

18.     This Court has diversity jurisdiction over this action under 28 U.S.C. §
1332(a), which provides, in relevant part: "The district courts shall have original jurisdiction of
all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive
of interest and costs, and is between . . . (1) citizens of different states."

### CITIZENSHIP

#### *Plaintiffs*

19.     Plaintiffs are citizens of Pennsylvania.  *See* Current Complaint ¶ 1.

#### *Defendant WFS*

20.     WFS is a corporation incorporated in Delaware with principal place of
business in New York.

21.     A corporation is a citizen of every state by which it has been incorporated
and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

22.     Therefore, WFS is a citizen of Delaware and New York.

#### *Defendant Akzo*

23.     Akzo is a limited liability company.

24.     For purposes of diversity jurisdiction, a limited liability company is a
citizen of any state of which a member of the company is a citizen.

25.     Counsel for Akzo has informed undersigned counsel that:

      a.     The sole member of Akzo is Nouryon Chemicals LLC.

      b.     The sole member of Nouryon Chemicals LLC is Nouryon USA LLC.

      c.     Nouryon USA LLC has nine members – (1) Nouryon US Holding 1 Inc.; (2) Nouryon US Holding 2 Inc.; (3) Nouryon US Holding 3 Inc.; (4) Nouryon US Holding 4 Inc.; (5) Nouryon US Holding 5 Inc.; (6) Nouryon US Holding 6 Inc.; (7) Nouryon US Holding 7 Inc.; (8) Nouryon US Holding 8 Inc.; and (9) Nouryon US Holding 9 Inc. – all of which are organized under the laws of Delaware and maintain their principal place of business in Chicago, Illinois.

26.     Pursuant to 28 U.S.C. § 1332(c)(1), then, Akzo is a citizen of Delaware and Illinois.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of its members … [and] where an LLC has, as one of its members, another LLC, 'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC.").

### ***Defendant BTX***

27.     Counsel for BTX has informed undersigned counsel that BTX is a trade name by which Bacarella Transportation Services, Inc. ("Bacarella") does business.

28.   Bacarella is a corporation incorporated in Connecticut with principal place of business in Connecticut.

29.   Therefore, Bacarella is a citizen of Connecticut.

### **_Defendant Tampano_**

30.   Defendant Bill Tampano, an individual, is, on information and belief, a citizen of New York.  *See* Current Complaint ¶ 7.

### **_Defendant Rimbaut / Fraudulent Joinder_**

31.   Defendant Rose Anne McGovern-Rimbaut, an individual, is a citizen of Pennsylvania.

32.   Under the doctrine of fraudulent joinder, however, this Court must disregard Ms. Rimbaut's citizenship for purposes of determining diversity.

33.   Under the fraudulent joinder doctrine "an action can be removed despite the existence of . . . non-diverse defendants if those parties were 'fraudulently' named as defendants with the sole purpose of defeating federal jurisdiction." *Moore v. Johnson & Johnson*, 907 F.Supp.2d 646, 662 (E.D. Pa. 2012).

34.   "A finding of fraudulent joinder permits the district court to disregard the citizenship of such non-diverse . . . defendants, assume jurisdiction over the action, dismiss any such fraudulently joined defendants, and retain jurisdiction over the case." *Id.*

35.     "'[J]oinder is fraudulent if 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'"  *Id*.

36.     Plaintiffs do not have a colorable claim against Ms. Rimbaut for two independent reasons:  (i) under Pennsylvania law an employee is not liable for the torts of her employer and plaintiffs have not alleged facts adequate to invoke the "participation theory," an exception to that general rule; and (ii) Ms. Rimbaut did not work for and had no involvement with the WFS operation that handled the shipment at issue (American Airlines Cargo).

### *Employees are not liable for the alleged torts of their employers.*

37.     As a general rule, an employee of a corporation, such as Ms. Rimbaut, cannot be held liable for torts allegedly committed by the corporation.  *Sherfey v. Johnson & Johnson*, No. 12-4162, 2014 U.S. Dist. LEXIS 10690, at *19 (E.D. Pa. Jan. 29, 2014) ("[A]n officer or agent of a corporation who takes no part in the commission of a tort committed by the corporation is not individually liable to third parties for such a tort . . . .") (applying Pennsylvania law).

38.     However, "Pennsylvania law recognizes that managers of a corporation may be held liable for torts committed by the corporation under the participation theory[, which] holds that a corporate officer may be held personally liable for his or her participation in tortious activity by the corporation, but only where the officer 'specifically direct[s] the particular act to be done or participate[s], or cooperate[s] therein.'"  *Moore*, 907 F. Supp. 2d at 663 (internal citations omitted).

39.     The participation theory "makes actionable an executive's misfeasance, but not nonfeasance." *Id.*

40.     Misfeasance "involves the improper performance of an act; whereas, nonfeasance refers to the simple failure to act."   *Sherfey*, 2014 U.S. Dist. LEXIS 10690, at *36; *see also Aldorasi v. Crossroads Hosp. & Mgmt. Co., LLC*, 344 F. Supp. 3d 814, 824 (E.D. Pa. 2018) (finding fraudulent joinder where allegations constituted nonfeasance because "the Complaint faults [individual supervisors] only for what they failed to do.").

41.     In determining whether there is a reasonable basis in fact or colorable ground supporting the claims against the alleged fraudulently joined defendant, Courts will disregard "bald or conclusory allegations" in the Complaint.  *See Moore*, 907 F. Supp. 2d at 668 ("[B]ald or conclusory allegations that a defendant 'knew' of a product defect or 'failed to use reasonable care' in the distribution or sale of a product do not establish colorable claims of negligence.").

42.     The Court should disregard plaintiffs' bald and conclusory allegations that Ms. Rimbaut "fail[ed] to properly" perform a number of her supposed job responsibilities.

43.     Regardless, plaintiffs' contention that Ms. Rimbaut "fail[ed] to properly" take a number of actions alleges only nonfeasance, not misfeasance.  Those allegations are not adequate under Pennsylvania law to hold Ms. Rimbaut personally liable for the alleged torts of her employer.

44.     Because plaintiffs have pled no colorable claim against Ms. Rimbaut under the participation theory or otherwise, plaintiffs have "fraudulently joined" Ms. Rimbaut in

this action and the Court must disregard her citizenship for purposes of its diversity jurisdiction analysis.

*Ms. Rimbaut had no involvement with the WFS operation that handled the shipment at issue.*

45.     When evaluating whether the fraudulent joinder doctrine applies to a given case, the Court may consider limited facts outside the pleadings.  *See Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967) (considering affidavit from non-diverse employee of defendant railroad in which he explained that, contrary to implications in the complaint, he was not employed by the railroad at the time of the accident at issue and in fact has been terminated fifteen months before the accident); *Aldorasi*, 344 F. Supp. 3d at 821 ("The court may also take a limited look beyond the pleadings to consider 'reliable evidence' proffered by the defendant to support the removal.").

46.     Ms. Rimbaut was not connected in any way with the WFS operation that handled the shipment at issue.  *See* Declaration of Rose Anne Rimbaut, attached as Exhibit 2.

47.     Specifically, at the time of the incident at issue, WFS had multiple, separate cargo operations at the Philadelphia International Airport supporting five different airlines – British Airways, Qatar Airways, Delta Airlines, Alaska Airlines and American Airlines.  *See id*. at ¶ 6.

48.     British Airways Cargo and American Airlines Cargo operated out of different physical facilities using different WFS employees who were trained on and followed different cargo handling rules and regulations.  *See id*. at ¶¶ 7-11.

49.     Ms. Rimbaut worked for WFS's British Airways Cargo operation.  She had no involvement in the American Airlines Cargo operation.  *See id*. at ¶¶ 12-16.

50.     The shipment at issue in this case was an American Airlines Cargo shipment.  *See id*. at ¶ 20.[1]

51.     Therefore, Ms. Rimbaut would have had nothing to do with the shipment at issue and would not have trained, supervised or instructed the WFS employees who did handle the shipment.  *See id*. at ¶ 21.

52.     Because Ms. Rimbaut did not work for and had no involvement with the WFS operation that handled the shipment at issue in this case (American Airlines Cargo), plaintiffs have no colorable claim against Ms. Rimbaut.

53.     Therefore, for this additional reason, the Court must disregard Ms. Rimbaut's citizenship for purposes of its diversity jurisdiction analysis pursuant to the fraudulent joinder doctrine.

---

[1]     In support of this fact, Ms. Rimbaut cites to an incident report published by the Pipeline and Hazardous Materials Safety Administration.  The Court may take judicial notice of the facts contained in this publicly-available government document.

### *Diversity Analysis*

54.     Plaintiffs are citizens of Pennsylvania.

55.     None of the properly joined defendants – WFS, Akzo, BTX and Mr. Tampano – are citizens of Pennsylvania.

56.     The Court must disregard the citizenship of Ms. Rimbaut under the fraudulent joinder doctrine.

57.     Therefore, this civil action is between citizens of different states.

58.     Plaintiffs and all properly joined defendants are diverse.

## AMOUNT IN CONTROVERSY

59.     A notice of removal "may assert the amount in controversy if the initial pleading seeks . . . a money judgment, but the State practice . . . permits recovery of damages in excess of the amount demanded; and . . . the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)."  28 U.S.C. § 1446(c)(2)(A) and (B).

60.     Here, plaintiff demands judgment "in excess of Fifty Thousand Dollars." Complaint, Wherefore clauses.

61.     Plaintiff alleges that, as a result of the incident at issue in this lawsuit, she has sustained "serious and permanent disabling injuries."  Current Complaint ¶ 90.

12

62.     Given the above allegations, the amount in controversy in this matter, on information and belief, exceeds $75,000.  *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (holding that the amount in controversy must be measured "by a reasonable reading of the value of the rights being litigated") (quoting *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

## VENUE AND TIMELINESS

63.     The United States District Court for the Eastern District of Pennsylvania is the proper venue for removal of this action because it is the district in which the state court action is pending.  *See* 28 U.S.C. § 1446(a).

64.     Pursuant to 28 U.S.C. § 1446(b), a defendant may remove an action within thirty days after receipt of a copy of the complaint through service or otherwise.

65.     Plaintiffs served the Current Complaint on WFS on October 18, 2019.  *See* Proof of Service, attached as Exhibit 3.

66.     WFS filed the instant Notice of Removal within thirty days after October 18, 2019.

## CONSENT

67.     Akzo consents to the removal of this action.  *See* Consent to Removal, attached as Exhibit 4.

68.     BTX and Mr. Tampano consent to the removal of this action.  *See* Consent to Removal, attached as Exhibit 5.

69.     The removal statute does not require Ms. Rimbaut to consent to removal because she is not properly joined.  *See* 28 U.S.C. ¶ 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."); *Balazik v. County of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995) ("The unanimity rule may be disregarded where . . . a defendant has been fraudulently joined.").  Nevertheless, Ms. Rimbaut consents to the removal of this action. *See* Consent to Removal, attached as Exhibit 6.

Respectfully Submitted,

/s/ Stephen J. Shapiro
Stephen J. Shapiro (Pa. I.D. 83961)
David R. Struwe (Pa. I.D. 311654)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone (215) 751-2000
Facsimile (215) 751-2205

*Attorneys for Defendants Worldwide Flight Services and Ruth Anne McGovern-Rimbaut*

Dated:  November 15, 2019

EXHIBIT 1

**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
BY:  LARRY BENDESKY/ADAM J. PANTANO/ROBERT
W. ZIMMERMAN/JORDAN L. HOWELL
IDENTIFICATION NO.:  51026/85261/208410/317159
1650 MARKET STREET, 52ND FLOOR
PHILADELPHIA, PA  19103
(215) 496-8282


Filed and Attested by the
Office of Judicial Records
15 OCT 2019 03:40 pm
A. SILIGRINI

**SCHWARZ & SCHWARZ, P.C.**
BY:  DANIEL A. SCHWARZ, ESQUIRE
IDENTIFICATION NO.: 60180
ONE LIBERTY PLACE – 51ST FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103
(215) 925-1200
*Attorneys for Plaintiffs*

| | |
|---|---|
| **KETURAH WINTERS and ERIC WINTERS,** **husband** **and wife,** <br> 6018 Cobbs Creek Parkway <br> Philadelphia, PA 19143 <br> **Plaintiffs** <br><br> v. <br><br> **AKZO NOBEL SURFACE CHEMISTRY,** **LLC a/k/a** **AKZO NOBEL, INC., a/k/a AKZO NOBEL** **COATINGS,** **INC.** <br> 150  Columbia Avenue <br> Reading, PA  19601 <br> AND <br> **BTX GLOBAL LOGISTICS** <br> 561 Main St. #2 <br> Bethlehem, PA 18018 <br> AND <br> **BILL TAMPANO** <br> **c/o BTX GLOBAL LOGISTICS** <br> 145 Hook Creek Blvd. <br> Building C-3 <br> Valley Stream, NY 11581 <br> AND <br> **WORLDWIDE FLIGHT SERVICES** <br> Philadelphia International Airport <br> Cargo City Building C6 2nd Floor <br> Philadelphia, PA 19153 <br> AND | **PHILADELPHIA COUNTY** **COURT OF COMMON PLEAS** **TRIAL DIVISION** <br><br> **OCTOBER TERM, 2019** <br><br> **NO.:** <br><br><br> **JURY TRIAL DEMANDED** |

**ROSE ANNE MCGOVERN-RIMBAUT**
14016 Rebecca Drive
Philadelphia, PA 19116
AND
**ABC CORPORATIONS 1-10**
AND
**JOHN DOES 1-10**
**Defendants**

## NOTICE TO PLEAD

| "NOTICE" | "AVISO" |
|---|---|
| "You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgement may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | "Le han demandado en corte. Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) días, a partir de recibir esta demanda y la notificatión para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted. Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir culquier otra demanda o alivio solicitados por el demandante. Usted puede perder dinero o propiedad u otros derechos importantes para usted. |
| "YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. PHILADELPHIA BAR ASSOCIATION LAWYER REFERRAL and INFORMATION SERVICE One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-1701" | USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PARGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL. ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO. SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO. ASSOCIACION DE LICENCIADOS DE FILADELFIA SERVICO DE REFERENCA E INFORMACION LEGAL One Reading Center, Filadelfia, Pennsylvania 19107 Telefono: (215) 238-1701" |

## COMPLAINT – CIVIL ACTION

### Parties

1.     Plaintiffs, Keturah Winters and Eric Winters, wife and husband, are adult individuals and citizens of the Commonwealth of Pennsylvania who resides at 6018 Cobbs Creek Parkway, Philadelphia, PA 19143.

2.     Defendant, Akzo Nobel Surface Chemistry, LLC a/k/a Akzo Nobel, Inc., a/k/a Akzo Nobel Coatings, Inc., (hereinafter referred to as "Akzo"), is a corporation globally based, which has engaged in business within the County of Philadelphia, Commonwealth of

Pennsylvania, on a regular, repetitive, continuous, and substantial basis, with a principal place of business located at the above captioned address.

3.      Defendants, John Doe 1-10 / ABC Corporations 1-10 are individuals or corporate entities who may be involved in any actions relevant to this case which may have been carried out by sister companies, subsidiaries and/or entities otherwise related to Defendant Akzo were taken by said sister companies, subsidiaries, and/or otherwise related entities as alter-egos of Defendant Akzo.

4.      Defendants, John Doe 1-10/ ABC Corporations 1-10 are individuals or corporate entities who may be involved in any actions relevant to this case which may have been carried out by sister companies, subsidiaries, parent companies, predecessor companies, successor companies and/or entities otherwise related to Defendant Akzo, whether foreign or domestic, were carried out at the direction and command of, and under the supervision of Defendant Akzo.

5.      The blending of corporate personnel and responsibilities, as well as financial and other resources enables the "piercing of the corporate veil" to hold Defendant Akzo fully liable for the actions of any such sister companies, subsidiaries or otherwise related entities including but not limited to those in Paragraphs three (3) and Four (4) above.

6.      Defendant, BTX Global Logistics (hereinafter referred to as "BTX") is a corporation globally based, which has engaged in business within the County of Philadelphia, Commonwealth of Pennsylvania, on a regular, repetitive, continuous, and substantial basis, with a principal place of business located at the above captioned address.

7.      Defendant, Bill Tampano, (hereinafter referred to as "Tampano"), is an adult individual who at all times relevant herein was employed by Defendant BTX at the above captioned address and was engaged in the business of Defendant BTX on a regular, repetitive,

Case ID: 191001324

continuous and substantial basis within the County of Philadelphia, Commonwealth of Pennsylvania.

8.      Defendants, John Doe 1-10 / ABC Corporations 1-10 are individuals or corporate entities who may be involved in any actions relevant to this case which may have been carried out by sister companies, subsidiaries and/or entities otherwise related to Defendant BTX were taken by said sister companies, subsidiaries, and/or otherwise related entities as alter-egos of Defendant BTX.

9.      Defendants, John Doe 1-10 /ABC Corporations 1-10 are individuals or corporate entities who may be involved in any actions relevant to this case which may have been carried out by sister companies, subsidiaries, parent companies, predecessor companies, successor companies and/or entities otherwise related to Defendant BTX, whether foreign or domestic, were carried out at the direction and command of, and under the supervision of, Defendant BTX.

10.     The blending of corporate personnel and responsibilities, as well as, financial and other resources enables the "piercing of the corporate veil" to hold Defendant BTX fully liable for the actions of any such sister companies, subsidiaries or otherwise related entities including but not limited to those described in paragraphs eight (8) and nine (9).

11.     Defendant, Worldwide Flight Services (hereinafter referred to as "Worldwide") is a corporation, existing under and by virtue of the laws of the Commonwealth of Pennsylvania, which at all times relevant hereto owned, operated, maintained, and engaged in business within the County of Philadelphia, Commonwealth of Pennsylvania, on a regular, systematic, continuous and substantial basis, with a principal place of business located at the above captioned address.

12.     Defendant, Rose Anne McGovern-Rimbaut is an adult individual who resides at the above captioned address, and who at all times relevant herein was an employee of Defendant Worldwide and was engaged in the business of Defendant, Worldwide on a regular, repetitive, continuous and substantial basis within the County of Philadelphia, Commonwealth of Pennsylvania.

13.     Defendants, John Doe 1-10 / ABC Corporations 1-10 are individuals or corporate entities who may be involved in any actions relevant to this case which may have been carried out by sister companies, subsidiaries and/or entities otherwise related to Defendant Worldwide were taken by said sister companies, subsidiaries, and/or otherwise related entities as alter-egos of Defendant Worldwide.

14.     Defendants, John Doe 1-10/ ABC Corporation 1-10 are individuals or corporate entities who may be involved in any actions relevant to this case which may have been carried out by sister companies, subsidiaries, parent companies, predecessor companies, successor companies and/or entities otherwise related to Defendant Worldwide, whether foreign or domestic, were carried out at the direction and command of, and under the supervision of, Defendant Worldwide.

15.     The blending of corporate personnel and responsibilities, as well as, financial and other resources enables the "piercing of the corporate veil" to hold Defendant Worldwide fully liable for the actions of any such sister companies, subsidiaries or otherwise related entities including but not limited to those described in Paragraphs thirteen (13) and fourteen (14) above.

16.     Defendants, John Doe 1-10/ ABC Corporations 1-10 are entities who were involved in the manufacturing, loading, shipping, transporting, packaging, delivering, inspecting,

handling and possessing of the subject chemical known as Alcosphere Lavender Meadows.

17.     Defendants, John Doe 1-10/ ABC Corporations 1-10 are entities who were involved in the manufacturing, inspecting, transporting, loading, shipping, transporting, packaging, delivering the subject fiber drum containers more fully described herein.

18.     Pursuant to Pa. R.Civ.P. 2005, Defendants, John Doe 1-10/ ABC Corporations 1-10 are John Doe/ABC Corporations designated fictitious names and are added to this action because their actual names and/or identities are unknown despite a reasonable and diligent search.

19.     Plaintiff reserves the right to amend this Complaint and name said unknown persons and/or entities as aforementioned as additional defendants pursuant to Pennsylvania Rules of Civil Procedure 2005 and 1033.

## BACKGROUND

20.     On or about March 24, 2018, at or about 6:00 PM, Plaintiff, Keturah Winters, was employed by American Airlines as a Fleet Service Agent and was working in the course and scope of her employment at the Philadelphia International Airport located in Philadelphia, PA, directly adjacent to an aircraft which was being loaded with fiber drum containers which contained a highly toxic, ultrahazardous, and abnormally dangerous chemical, in powder form, known as Alcosphere Lavender Meadows.

21.     The exposure to, inhaling of and/or the ingesting of the aforesaid highly toxic, ultrahazardous, and abnormally dangerous chemical was known to cause serious injuries to persons exposed thereto.

22.     On the aforesaid date, time, and place, the aforesaid Alcosphere Lavender Meadows was packaged for shipment in unsafe fiber drum containers without proper liners.

23.     On the aforesaid date, time, and place, the aforesaid drums were placed on a pallet being ostensibly secured to be loaded onto the aforesaid aircraft.

24.     As the aforesaid drums were being loaded, one of the fiber drums which was improperly secured on a pallet made contact with a "pull-in-hook roller" which was attached to the aircraft and as a result, punctured the said fiber drum.

25.     As a result of the aforesaid improper securement, use of improper containers without adequate liners and the subsequent puncture, the highly toxic, ultrahazardous, and abnormally dangerous powdered chemical contents of the drum were caused to be expelled and permeated the vicinity of the aircraft where the Plaintiff, Keturah Winters was situated causing Plaintiff to be exposed to the same.

26.     As a result of her exposure to and the ingesting and inhaling of the aforesaid highly toxic, ultrahazardous, and abnormally dangerous chemical, Plaintiff, Keturah Winters was caused to sustain the serious personal injuries and other damages which are hereinafter set forth in detail.

## DEFENDANTS' INVOLVEMENT

27.     On or about March 24, 2018, and for a long time prior thereto, Defendant, Akzo was a leading global paints and coatings company and a major producer, manufacturer, storer and loader of specialty chemicals which are ultrahazardous, dangerous and highly toxic.

28.     On or about March 24, 2018, Defendant, Akzo was the manufacturer, user, possessor and transporter of the aforesaid highly toxic, ultrahazardous, abnormally dangerous chemical, as well as the aforesaid fiber drum containers housing said chemicals.

29.     Defendant, Akzo was responsible for the placing of said highly toxic, ultrahazardous, abnormally dangerous chemical in containers which were safe and secure for

use, handling and transportation to their ultimate destination, including the County of Philadelphia, Pennsylvania.

30.     The aforesaid fiber drum containers, being loaded onto the aforesaid aircraft, were defective, unsafe and abnormally dangerous for the containment and transfer of highly toxic, hazardous and dangerous chemicals in that they were constructed of fiber materials which were too thin and porous and otherwise damaged and which would and did allow the escape of the aforesaid chemicals.

31.     On or about March 24, 2018, Defendant, Akzo carried on an abnormally dangerous activity by manufacturing, possessing, using, packaging and facilitating the transportation of the aforesaid fiber drums and chemicals for profit.

32.     The above incident and the serious personal injuries and other damages sustained by Plaintiff, Keturah Winters, were directly and proximately caused by the neglect, careless and reckless conduct of Defendant, Akzo.

33.     On or about March 24, 2018, and for a long time prior thereto, Defendant, BTX, had a national and international network of locations, air and ground series for the shipping, handling, use and delivering of freight and cargo, including, but not limited to, the transfer of cargo containing ultrahazardous, abnormally dangerous and toxic chemicals to various locations including the County of Philadelphia, Pennsylvania.

34.     On or about March 24, 2018 and prior thereto, Defendant, BTX, pursuant to contract, handled and shipped the aforesaid defective, unsafe and abnormally dangerous fiber drum containers containing the aforesaid highly toxic, ultrahazardous and abnormally dangerous chemical to the Philadelphia International Airport.

35.     Prior to said shipment, Defendant, BTX, was responsible for inspecting the aforesaid fiber drum containers and to ensure that they were safely constructed and could safely be transported, loaded and delivered without being punctured, thereby allowing the escape of their highly toxic, ultrahazardous and abnormally dangerous chemical.

36.     On or about March 24, 2018, the above described actions by Defendant, BTX, constituted an abnormally dangerous activity for profit.

37.     The above incident and the serious personal injuries and other damages sustained by Plaintiff, Keturah Winters, were directly and proximately caused by the neglect, careless and reckless conduct of Defendant, BTX.

38.     At all times relevant herein, and for a long time prior thereto, Defendant, Tampano was tasked by Defendant, BTX at its Valley Stream, NY facility to inspect, supervise and approve of the handling and transportation of the ultrahazardous, abnormally dangerous and toxic chemical set forth above to the Philadelphia International Airport.

39.     It was the further duty of Defendant, Tampano, on behalf of Defendant BTX to inspect and approve of the drum containers housing the aforesaid ultrahazardous, abnormally dangerous and toxic chemical to ensure that said drum containers were safely constructed and could be transported without danger or risk of being punctured or broken thereby causing the ultrahazardous, abnormally dangerous and toxic chemical contents of the aforesaid containers to escape and endanger persons who may be in the vicinity of said occurrence, such as the Plaintiff herein.

40.     On or about March 24, 2018, Defendant, Tampano, did inspect, supervise and approve of the shipment of the aforesaid defective, unsafe and abnormally dangerous fiber drum containers containing the aforesaid highly toxic, ultrahazardous and abnormally dangerous chemical.

41.     On March 24, 2018, Defendant, Tampano, on behalf of Defendant, BTX, executed an Air Way bill for the shipping and delivering by air of the aforesaid defective, unsafe and abnormally dangerous fiber drum containers which specifically included the following language: "Dangerous Goods as per attached DGD" "Nine (9) pieces dangerous goods".

42.     Above Defendant Tampano's signature on the Air Way Bill, the following language was included: "Shipper certifies that the particulars on the face hereof are correct and that insofar as any part of the consignment contains dangerous goods, such part is properly described by name and is in proper condition for carriage by air according to the applicable Dangerous Goods Regulations".

43.     The Air Way bill contained the following language: "Shipper [BTX] agrees that the shipment may be carried via intermediate stopping places which carrier deems appropriate…"

44.     On or about March 24, 2018, the above described actions by Defendant, Tampano, constituted an abnormally dangerous activity for profit.

45.     The above incident and the serious personal injuries and other damages sustained by Plaintiff, Keturah Winters, were directly and proximately caused by the neglect, careless and reckless conduct by Defendant, Tampano.

46.     On or about March 24, 2018, and for a long time prior thereto, Defendant,

Worldwide was one of the world's leading ground handling organizations, carrying on abnormally dangerous activities, including but not limited to providing high quality cargo, passenger, premium, ramp, baggage and technical services involving ultrahazardous, abnormally dangerous and toxic chemicals across a network spanning over 198 locations in more than 22 countries on five (5) continents including the County of Philadelphia, Commonwealth of Pennsylvania.

47.     On or about March 24, 2018, Defendant, Worldwide had contracted to inspect, transport, prepare for loading and load the aforesaid defective, unsafe and abnormally dangerous drums containing the aforesaid highly toxic, ultrahazardous, and abnormally dangerous chemical onto a pallet which could then allow said drums to be  loaded into the cargo compartment of the aforesaid aircraft.

48.     On the aforesaid date, in order to safely secure the aforesaid defective, unsafe and abnormally dangerous drums onto the aforesaid pallet, Defendant, Worldwide, failed to secure the drums with stretch wrap and bands to ensure that the drums on the pallet, which weighed approximately 5700 pounds, would not shift.

49.     At the above time and place, while the pallet containing the aforesaid defective, unsafe and dangerous fiber drums were being loaded onto the aircraft, the said fiber drum containers shifted and one of the improperly secured drums was punctured by an object attached to the entranceway of the aircraft.

50.     The shifting of the aforesaid defective, unsafe and dangerous fiber drums was caused by the negligent, improper, reckless and unsafe loading and securing of said drums onto the pallet by Defendant Worldwide.

51.     On or about March 24, 2018, the above described actions by Defendant, Worldwide, constituted an abnormally dangerous activity for profit.

52.     The above incident and the serious personal injuries and other damages sustained by Plaintiff, Keturah Winters, were directly and proximately caused by the neglect, careless and reckless conduct by Defendant, Worldwide.

53.     On or about March 24, 2018, and for a long time prior thereto, Defendant Rose Anne McGovern-Rimbaut was assigned by Worldwide the role of manager of cargo training, safety and compliance for services which involved, *inter alia*, the shipping and transfer of cargo containing ultrahazardous, abnormally dangerous and highly toxic chemicals into the County of Philadelphia, Pennsylvania.

54.     On or about the above date, Defendant, Rose Anne McGovern-Rimbaut, in the role of manager of cargo training, safety and compliance was responsible for training, safety and supervising Worldwide's employees to take all measures to inspect and ensure that the aforesaid drums and their contents were being transferred and loaded onto the aforesaid aircraft in containers which were safe and in a safe manner, especially when the cargo contained highly toxic, ultrahazardous and abnormally dangerous chemicals as was present herein.

55.     On or about March 24, 2018, the above described actions by Defendant, Rose Anne McGovern-Rimbaut, constituted an abnormally dangerous activity for profit.

56.     The above incident and the serious personal injuries and other damages sustained by Plaintiff, Keturah Winters, were directly and proximately caused by the neglect, careless and reckless conduct by Defendant, Rose Anne McGovern-Rimbaut.

**COUNT I – KETURAH WINTERS v. DEFENDANT, AKZO**

**NEGLIGENCE, CARELESSNESS AND RECKLESSNESS OF DEFENDANT, AKZO**

57.     All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

58.     The negligence, carelessness, and recklessness of Defendant, Akzo, including its agents, servants and/or employees, consisted of the following in addition to the allegations set forth above:

a. Constructing, handling, using and facilitating the transportation of said drum constructed of fiber materials which Defendant, Akzo, knew or should have known were defective, unsafe and dangerous when containing the aforesaid ultrahazardous, abnormally dangerous and toxic chemical;

b. Constructing, using and transporting said drum constructed of fiber materials when Defendant, Akzo, knew or should have known that the fiber materials used in the construction of said drum could be easily punctured which would allow the escape of the ultrahazardous, abnormally dangerous and highly toxic chemical contents;

c. Defendant, Akzo knew or should have known that the said drum containing the aforesaid toxic, abnormally dangerous and ultrahazardous chemical was defective, unsafe and improper in that the walls of the container drum were too thin and porous so that it could be easily punctured and lead to the expulsion of its aforesaid contents;

d. Packing or permitting the packing of ultrahazardous, abnormally dangerous and

Case ID: 191001324

toxic chemical into the said drum;

e.  Transporting, permitting and facilitating the transfer of the said drum when Defendant, Akzo, knew or should have known that the fiber materials used in the construction of said drum could be easily punctured which would allow escape of its contents consisting of the ultrahazardous, abnormally dangerous and toxic chemicals;

f.  Failure to inspect the condition and safety of said drum prior to its transportation;

g.  Failing to properly place, inspect, maintain, repair or reconstruct the drums in order to prevent the possibility of any puncture to said drums and the release of their toxic, hazardous and abnormally dangerous chemicals;

h.  Failing to safely handle and transport said drum when Defendant, Akzo, knew or should have known of the dangerous and harmful effects of the contents of said drum should it be punctured and expel the said toxic, ultrahazardous, and abnormally dangerous chemicals;

i.  Failing to properly train and instruct its employees in the use of proper materials in the construction of said drums which would be safe for the use, handling and transportation of ultrahazardous, abnormally dangerous and toxic chemicals;

j.  Allowed and permitted its manufacturer or employees to use thin and porous fiber material in the construction of said drums containing ultrahazardous, abnormally dangerous and toxic chemicals when Defendant, Akzo, knew or should have known of the unacceptable and great risk of said drums being punctured as a result of its defective and unsafe construction;

k.  Failing to properly label the said defective and unsafe drums of the great dangers

of puncture, especially when their contents contained ultrahazardous, abnormally dangerous and toxic chemicals;

l. Failing to notify the subsequent users, handlers and transporters of said defective drums of the danger of puncture which would cause the escape of its ultrahazardous, abnormally dangerous and toxic chemicals;

m. Failing to properly notify and warn the subsequent users, handlers and transporters of said defective drums of the harmful and dangerous risks and consequences to persons who might be exposed to, inhale or ingest the ultrahazardous, abnormally dangerous and toxic chemicals should the drums be punctured;

n. Failing to properly document, warn, and advise those persons who may be in the nearby vicinity of said defective drums of the dangerous risk or possibility of the puncture of said drums which would allow the expulsion of the contents thereof;

o. Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations;

p. Failing to comply with all relevant Federal, State and International codes, laws, rules, regulations and industry standards which are relevant to this matter; and

q. Failing to exercise reasonable care in the use, construction, packaging, labeling, handling, transport, securing, and loading of the said drum containing the toxic, ultrahazardous, and abnormally dangerous chemicals.

59.     By reason of the careless, negligent and reckless conduct of Defendant, Akzo, Plaintiff,  Keturah Winters was caused to sustain serious and permanent personal injuries including, but not limited to:  respiratory distress, acute asthma exacerbation, dyspnea, mucosal

edema, chronic rhinitis, Reactive Airways Dysfunction Syndrome (RADS) secondary to toxic exposure, mental and emotional distress and other body parts; an anxiety reaction and shock to her nerves and nervous system; and other neurological, psychological and respiratory injuries, the full extent of which is yet to be determined. All of the preceding may and probably will be permanent in nature and will continue into the indefinite future.

60.     By reason of the aforesaid incident, Plaintiff, Keturah Winters, has been and will in the future be hindered and prevented from attending to her usual and daily occupational duties and activities, which has resulted in and will continue to result in a loss of earnings and earning power and other damages, all of which is to her great financial detriment and loss.

61.     As a result of the aforesaid incident, Plaintiff, Keturah Winters, has lost the ability to enjoy life to the fullest degree and has been prevented and will in the future be prevented from pursuing her normal and daily duties and activities of life, all of which is to her great financial loss and detriment.

62.     As a result of the aforesaid incident, Plaintiff, Keturah Winters, has incurred various medical  and other related expenses and will be obliged for an indefinite period of time in the future to continue to expend monies and incur further obligations for her medical care and treatment and other related expenses.

63.     As a result of the conduct of Defendants, Plaintiff, Keturah Winters, has sustained and makes claims for extreme pain, suffering, loss of physical function, permanent physical, mental and psychological injuries, humiliation and embarrassment, loss of life's pleasures, and any and all other damages to which she is entitled under the laws of the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendant, Akzo, and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

## COUNT II- KETURAH WINTERS V. DEFENDANT, AKZO

### STRICT LIABILITY OF DEFENDANT, AKZO

64.     All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

65.     As a result of its abnormally dangerous activity set forth in all of Plaintiff's preceding allegations herein, Defendant, Akzo is strictly liable to Plaintiff Keturah Winters under the Restatement of Torts (Second) including, but not limited to Sections 519 and 520 as follows:

    a.  Defendant, Akzo is engaged in the business of production, manufacturing, using, handling, transporting, selling, transferring, distributing, and loading of a chemical known as Alcosphere Lavender Meadows, a chemical which is toxic, ultrahazardous and abnormally dangerous;

    b.  The drum set forth above which was punctured and contained the chemical known as Alcosphere Lavender Meadows was constructed, manufactured, used and transported by Defendant, Akzo;

    c.  The drum and its contents set forth above were marketed and placed in the general stream of commerce by the Akzo;

d.  The drum and its contents set forth above was expected and intended to reach its users without substantial change in the condition in which it was received, transported, and secured;

e.   The danger of puncture to the said drum containing the toxic, ultrahazardous, and abnormally dangerous chemical Alcosphere Lavender Meadows during its transport and loading onto aircraft was foreseeable;

f.  Defendant, Akzo failed to properly document and label the toxic, ultrahazardous, and abnormally dangerous contents of the said drum which was being transported;

g.  Defendant, Akzo failed to undertake proper precautions to safely transport said drum;

h.  Defendant, Akzo knew or should have known that the drum containing the aforesaid toxic and ultrahazardous chemical was unsafe and improper in that the walls of the said container drum were too thin and porous so that it could be easily punctured and lead to the expulsion of the aforesaid contents;

i.  Defendant, Akzo knew or should have known that the said drums it manufactured or used would be transported, secured, and loaded onto pallets, and that said drums were unsafely and defectively built being composed of faulty materials which could easily be punctured and lead to the expulsion of the toxic, ultrahazardous, and abnormally dangerous chemicals contained therein;

j.  Defendant, Akzo, failed to train and instruct its employees in the manufacture and/or use of safe and proper materials in the construction of said drums containing toxic, ultrahazardous, and abnormally dangerous chemicals in order to

prevent any punctures which would allow the expelling of said contents;

k.  Defendant, Akzo, failed to notify the subsequent users, handlers and transporters of said drums of the danger of puncture which would cause the escape of its ultrahazardous, abnormally dangerous and toxic chemicals;

l.  Defendant, Akzo, failed to properly document, warn and advise those persons who may be in the nearby vicinity of said drums, including Plaintiff Keturah Winters, of the dangerous risk or possibility of the puncture of said drums which would allow the expulsion of the contents thereof;

m.  Defendant, Akzo knew or should have known of the existence of a high degree of risk of harm to persons such as Plaintiff, Keturah Winters, as a result of its activity herein;

n.  Defendant, Akzo, knew or should have known that the harm to Plaintiff, Keturah Winters, would be great;

o.  Defendant, Akzo, knew or should have known the risk of puncture to the said drum and the danger of its aforesaid activity in the manufacture, possession, use, handling and transportation of said drum;

p.  The value to the community of the chemical described herein which is a surfactant (a fragrant and/or powder which goes into paint) is greatly outweighed by its dangerous attributes; and

q.  Failing to comply with all relevant Federal, State and International codes, laws, rules, regulations and industry standards which are relevant to this matter.

66.  The drum and its contents set forth above were in defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer;

and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

67.     As a result of the foregoing, Defendant, Akzo, is strictly liable to the Plaintiff.

68.     By reason of said Defendant Akzo's reckless conduct and its willful and intentional failure to conform to its obligations and duties under the Restatement of the Law of Torts (second), including, but not limited to Section 519 and 520, as aforesaid, Plaintiff, Keturah Winters, was caused to sustain the serious and permanent disabling personal injuries and other damages previously described.

69.     Defendant, Akzo, by engaging in the aforesaid abnormally dangerous, hazardous and/or ultrahazardous activities is strictly liable to plaintiff, Keturah Winters without regard to its negligent, reckless or willful conduct for all damages and injuries sustained by said Plaintiff, even if it had exercised the utmost care to prevent the harm.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendant, Akzo and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa.R.C.P. 238, interest and costs, and brings this action to recover the same.

## COUNT III – KETURAH WINTERS v. DEFENDANT, BTX

## NEGLIGENCE, CARELESSNESS AND RECKLESSNESS OF DEFENDANT, BTX

70.     All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

71.     The negligence, carelessness, and recklessness of Defendant, BTX, directly and by and through its agents, servants and/or employees, consisted of the following in addition to the allegations set forth above:

Case ID: 191001324

a.   Failure to inspect the condition and safety of said drum prior to its transportation;

b.   Transporting, permitting and facilitating the transfer to the said drum when Defendant, BTX, knew or should have known that the fiber materials used in the construction of said drum could be easily punctured which would allow the escape of its contents consisting of the ultrahazardous, abnormally dangerous and toxic chemicals;

c.   Failing to properly place, inspect, maintain, repair or reconstruct the drums in order to prevent the possibility of any puncture to said drums and the release of their toxic, hazardous and abnormally dangerous chemicals;

d.   Failing to safely load said drum for transport;

e.   Failing to properly place, inspect, maintain and/or repair the drums in order to prevent the possibility of any puncture to said drums and the release of their toxic, hazardous and abnormally dangerous chemicals;

f.   Failing to safely transport, secure, and load said drum when Defendant, BTX, knew or should have known of the dangerous and harmful effects of the contents of said drum should it be punctured and expel the said toxic, ultrahazardous, abnormally dangerous and toxic chemicals;

g.   Handling, using and transporting said drum containing the said highly toxic, ultrahazardous and abnormally dangerous chemical when Defendant, BTX, knew or should have known of its defective construction and the propensity and risk of said drum being punctured;

h.  Failing to properly document and label the said defective and unsafe drums of the great dangers of puncture, especially when their contents contained ultrahazardous, abnormally dangerous and toxic chemicals;

i.  Failing to notify the subsequent users, handlers and transporters of said drums of the danger of puncture which would cause the escape of its ultrahazardous, abnormally dangerous and toxic chemicals;

j.  Failing to properly notify and warn the subsequent users, handlers and transporters of said drums of the harmful and dangerous risks and consequences to persons who might be exposed to, inhale or ingest the ultrahazardous, abnormally dangerous and toxic chemicals should the drums be punctured;

k.  Failing to properly document, warn and advise those persons who may be in the nearby vicinity of said drums of the dangerous risk or possibility of the puncture of said drums which would allow the expulsion of the contents thereof;

l.  Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations;

m.  Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations;

n.  Failing to comply with all relevant Federal, State, and International codes, laws, rules, regulations and industry standards which are relevant to this matter;

o.  Failing to exercise reasonable care in the use, construction, packaging, labeling, handling, transport, securing and loading of the said drum containing the toxic, ultrahazardous, and abnormally dangerous chemicals; and

p.  Failing to properly train, instruct, and provide necessary information and guidelines to its employees on the proper way or method of using, handling, transporting, inspecting, securing and loading said drums.

72.     As a result of Defendant, BTX's aforesaid conduct, Plaintiff, Keturah Winters, was caused to sustain the serious and permanent disabling injuries and other damages set forth above.

WHEREFORE, Plaintiff, Keturah Winters and Eric Winters, demand judgment against Defendant, BTX, and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

## COUNT IV – KETURAH WINTERS v. DEFENDANT, BTX

## STRICT LIABILITY OF DEFENDANT, BTX

73.     All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

74.     As a result of its abnormally dangerous activity set forth in all of Plaintiff's preceding allegations herein, Defendant, BTX, is strictly liable to Plaintiff Keturah Winters under the Restatement of Torts (Second) including, but not limited to, Sections 519 and 520 as follows:

a.  By its activities set forth above, Defendant BTX was at the time of the aforesaid incident engaged in the business of possessing, using, selling, transferring, transporting, distributing, and loading of chemicals known as Alcosphere Lavender Meadows, a chemical which is toxic, ultrahazardous and dangerous;

Case ID: 191001324

b. The drum set forth above which was punctured contained the aforesaid chemical known as Alcosphere Lavender Meadows;

c. Defendant, BTX, failed to properly inspect the aforesaid drum before transporting, securing and loading it to a subsequent user;

d. The danger of puncture to the drum containing the toxic, ultrahazardous, and dangerous chemical Alcosphere Lavender Meadows during its transport and loading was foreseeable;

e. Defendant, BTX, failed to properly document and label said drum of its toxic, ultrahazardous, and dangerous contents;

f. Defendant, BTX, failed to undertake proper precautions to safely load, transport, and secure said drum;

g. Defendant, BTX, failed to properly train, instruct, and provide necessary information and guidelines to its employees on the proper way or method of transporting, using, handling, inspecting, securing and loading said drums;

h. Defendant, BTX, knew or should have known that the aforesaid drum containing the aforesaid toxic, ultrahazardous and dangerous chemical was defective, unsafe and improper for transport and loading in that it could be easily punctured and lead to the expulsion of the aforesaid contents;

i. Defendant, BTX, knew or should have known that the defective and unsafe drums it transported, handled, used, secured, and loaded, were built and composed of faulty materials which could easily be punctured and lead to the expulsion of the toxic, hazardous, and dangerous chemicals stored therein;

j. Defendant, BTX, failed to properly warn and advise those persons who may be in

Case ID: 191001324

the nearby vicinity of said drums of the dangerous risk or possibility of the puncture of said drums which would allow the expulsion of the contents thereof;

k.  Defendant, BTX, knew or should have known of the existence of a high degree of risk of harm to persons such as Plaintiff, Keturah Winters, as a result of its activity herein;

l.  Defendant, BTX, knew or should have known that the harm to Plaintiff, Keturah Winters, would be great;

m.  Defendant, BTX, knew or should have known of the unreasonable risk of puncture to the said drum and the danger of its aforesaid activity in the securing, using, handling, transportation and loading of said drum;

n.  The value to the community of the chemical described herein which is a surfactant (a fragrant and/or powder which goes into paint) is greatly outweighed by its dangerous attributes;

o.  Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations; and

p.  Failing to comply with all relevant Federal, State and International codes, laws, rules, regulations and industry standards which are relevant to this matter.

75.  The drum and its contents set forth above were in defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

76.  As a result of the foregoing Defendant, BTX, is strictly liable to the Plaintiff.

77.  By reason of Defendant, BTX's reckless conduct and its willful and intentional

failure to conform to its obligations and duties under the Restatement of the Law of Torts (second), including, but not limited to Sections 519 and 520, as aforesaid, Plaintiff, Keturah Winters, was caused to sustain the serious and permanently disabling personal injuries and other damages set forth above.

78.     Defendant, BTX, by engaging in the aforesaid abnormally dangerous, hazardous and/or ultrahazardous activities is strictly liable to Plaintiff, Keturah Winters, without regard to its negligent, reckless or willful conduct for all damages and injuries sustained by Plaintiff, even if it had exercised the utmost care to prevent the harm.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendant, BTX, and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

## COUNT V – KETURAH WINTERS V. BILL TAMPANO

### NEGLIGENCE, CARELESSNESS AND RECKLESSNESS OF DEFENDANT, TAMPANO

79.     All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

80.     In addition to the allegations set forth above, the negligence, carelessness, and recklessness of Defendant, Tampano, consisted of the following:

   a.   Failure to properly inspect, supervise and approve of the handling and transfer of the aforesaid drum which contained ultrahazardous, abnormally dangerous and toxic chemicals;

b.  Failure to insure and require that said drum was safely constructed and be transported without danger or risk of being punctured or broken;

c.  Executing the aforesaid Air Way Bill, when Defendant, Tampano, knew or should have known that said drum being transported was defectively and dangerously constructed and constituted a foreseeable and unreasonable risk and danger of being punctured which would cause the escape of said contents and endanger persons who may be in the vicinity of said occurrence;

d.  Failure to properly document and label said drum of its toxic, ultrahazardous, and dangerous chemical content, as well as the danger of any puncture of said drum as a result of its faulty and unsafe construction;

e.  Failure to use, train and instruct the employees of Defendant, BTX, in the use and transportation and handling of safe and proper materials in the construction of said container drums containing toxic, hazardous, and dangerous chemicals in order to prevent any punctures which would allow the expulsion of said contents;

f.  Failure to take the necessary and proper precautions to prevent the puncture of said drum while being transported or loaded onto subsequent carriers or aircraft;

g.  Failure to ascertain and inspect said drums to ensure that their construction and the materials used for their construction were adequate to prevent any puncture into said drums which would cause the release and expulsion of the toxic, ultrahazardous and abnormally dangerous chemicals stored therein;

h.  Failure to adequately document and label the said drums of the toxic, ultrahazardous, and abnormally dangerous chemical contents thereof, as well as

the danger of any puncture of said drums as a result of their faulty and unsafe construction;

i. Failure to properly document, warn and advise those persons who may be in the nearby vicinity of said drums including Plaintiff, Keturah Winters, of the dangerous risk or possibility of the puncture of said drums which would allow the expulsions of the contents thereof;

j. Failure to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations;

k. Failure to comply with all relevant Federal, State and International codes, laws, rules, regulations, and industry standards which are relevant to this matter; and

l. Failure to exercise reasonable care in the transport, securing, and loading of the said drum containing the toxic, ultrahazardous and abnormally dangerous chemicals.

81. As a result of Defendant, Tampano's aforesaid negligent, careless and reckless conduct, Plaintiff, Keturah Winters, was caused to sustain the serious and permanent injuries and other damages set forth above.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendant, Tampano, and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

**COUNT VI – KETURAH WINTERS v. DEFENDANT, TAMPANO**

**STRICT LIABILITY OF DEFENDANT, TAMPANO**

82.     All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

83.     As a result of his abnormally dangerous activity set forth in all of Plaintiff's preceding allegations herein, Defendant, Tampano is strictly liable to Plaintiff, Keturah Winters under the Restatement of Torts (Second) including, but not limited to, Sections 519 and 520 as follows:

    a.  Defendant, Tampano, as the employee of BTX, was at all times relevant herein, engaged in the business of possessing, using, selling, transferring, transporting, distributing, and loading of chemicals known as Alcosphere Lavender Meadows, a chemical which is highly toxic, ultrahazardous and dangerous;

    b.  The drum set forth above which was punctured contained in the aforesaid chemical known as Alcosphere Lavender Meadows;

    c.  Defendant, Tampano, failed to properly inspect the aforesaid defective and dangerous drum before transporting, securing and loading it to a subsequent user;

    d.  The danger of puncture to the drum containing the toxic, ultrahazardous, and dangerous chemical Alcosphere Lavendar Meadows during its transport and loading was foreseeable;

    e.  Defendant, Tampano, failed to properly document and label said drum of its toxic, ultra-hazardous and dangerous contents;

f. Defendant, Tampano, failed to undertake proper precautions to safely load, transport, and secure said drum;

g. Defendant, Tampano, failed to properly train, instruct, and provide necessary information and guidelines to his fellow employees on the proper way or method of using, handling, transporting, inspecting, securing and loading said drums;

h. Defendant, Tampano, knew or should have known that the aforesaid drum containing the aforesaid toxic, ultrahazardous and dangerous chemical was unsafe, defective and improper for transport and loading in that it could be easily punctured and lead to the expulsion of the aforesaid contents;

i. Defendant, Tampano, knew or should have known that the drums he permitted to be transported, secured, and loaded were built and composed of faulty materials which could easily be punctured and lead to the expulsion of the toxic, hazardous and dangerous chemicals stored therein;

j. Defendant, Tampano, failed to properly warn and advise those persons who may be in the nearby vicinity of said drums of the dangerous risk or possibility of the puncture of said drums which would allow the expulsion of the contents thereof;

k. Defendant, Tampano, knew or should have known of the existence of a high degree of risk or harm to a person such as Plaintiff, Keturah Winters, as a result of its activity herein;

l. Defendant, Tampano, knew or should have known that the harm to Plaintiff, Keturah Winters, would be great;

m. Defendant, Tampano, knew or should have known of the risk of puncture to the said

drum and danger of its aforesaid activity in the securing and transportation of said drum;

n. The value to the community of the chemical described herein which was a surfactant (a fragrant and/or powder which goes into paint) is greatly outweighed by its dangerous attributes;

o. Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations;

p. Failing to comply with all relevant Federal, State and International codes, laws, rules, regulations and industry standards which are relevant to this matter;

84.     The drum and its contents set forth above were in defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

85.     As a result of the foregoing, Defendant, Tampano, is strictly liable to Plaintiff.

86.     By reason of Defendant, Tampano's reckless conduct and his willful and intentional failure to conform to his obligations and duties under the Restatement of Torts (second), including, but not limited to Sections 519 and 520, as aforesaid, Plaintiff, Keturah Winters, was caused to sustain the serious and permanently disabling personal injuries and other damages set forth above.

87.     Defendant, Tampano, by engaging in the aforesaid abnormally dangerous, hazardous and/or ultrahazardous activities is strictly liable to Platiniff, Keturah Winters, without regard to his negligent, reckless or willful conduct for all damages and injuries sustained by said Plaintiff, even if he had exercised the utmost care to prevent the harm.

WHEREFORE, Plaintiff, Keturah Winters and Eric Winters, demand judgment against Defendant, Tampano, and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

## COUNT VII – KETURAH WINTERS V. DEFENDANT, WORLDWIDE

## NEGLIGENCE, CARELESSNESS AND RECKLESSNESS OF DEFENDANT, WORLDWIDE

88.     All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

89.     The negligence, carelessness, and recklessness of Defendant, Worldwide, directly and by and through its agents, servants and/or employees, consisted of the following in addition to the allegations set forth above:

    a.  Failure to inspect the condition and safety of said drum prior to its transportation;

    b.  Transporting, permitting and facilitating the transfer of the said drum when Defendant, Worldwide, knew or should have known that the fiber materials used in the construction of said drum could be easily punctured which would allow the escape of its contents consisting of the ultrahazardous, abnormally dangerous and toxic chemicals;

    c.  Failing to properly place, inspect, maintain, repair or reconstruct the drums in order to prevent the possibility of any puncture to said drums and the release of their toxic, hazardous and abnormally dangerous chemicals;

    d.  Failing to safely load said drum for transport;

e.  Failing to properly place, inspect, maintain and/or repair the drums in order to prevent the possibility of any puncture to said drums and the release of their toxic, hazardous and abnormally dangerous chemicals;

f.  Failing to safely transport, secure and load said drum when Defendant, Worldwide, knew or should have known of the dangerous and harmful effects of the contents of said drum should it be punctured and expel the said toxic, ultrahazardous, abnormally dangerous and toxic chemicals;

g.  Handling, using and transporting said drum containing the said highly toxic, ultrahazardous and abnormally dangerous chemical when Defendant, Worldwide, knew or should have known of its defective construction and the propensity and risk of said drum being punctured;

h.  Failing to properly document and label the said defective and unsafe drums of the great dangers of puncture, especially when their contents contained ultrahazardous, abnormally dangerous and toxic chemicals;

i.  Failing to notify and warn the subsequent users, handlers and transporters of said drums of the danger of puncture which would cause the escape of its ultrahazardous, abnormally dangerous and toxic chemicals;

j.  Failing to properly notify and warn the subsequent users, handlers and transporters of said drums of the harmful and dangerous risks and consequences to persons who might be exposed to, inhale or ingest the ultrahazardous, abnormally dangerous and toxic chemicals should the drum be punctured;

k.  Failing to properly document, warn, and advise those persons who may be in the nearby vicinity of said drums of the dangerous risk or possibility of the puncture of

said drums which would allow the expulsion of the contents thereof;

l.  Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations;

m.  Failing to comply with all relevant Federal, State and International codes, laws, rules, regulations, and industry standards which are relevant to this matter;

n.  Failing to exercise reasonable care in the use, construction, packaging, labeling, handling, transport, securing and loading of the said drum containing the toxic, ultrahazardous, and abnormally dangerous chemicals;

o.  Failing to properly train, instruct, and provide necessary information and guidelines to its employees on the proper way or method of using, handling, inspecting, securing and transporting said drums;

p.  Failing to properly inspect, transport, handle and load the aforesaid drums;

q.  Failure to safely secure the aforesaid defective, unsafe and abnormally dangerous drums onto the aforesaid pallet;

r.  Failure to properly use, place and secure the wrapping, side nets and skids to ensure that the said defective drums were safely secured on the aforesaid skid and pallet to prevent any shifting of the said defective drums;

s.  Failure to properly and safely secure the said defective drums onto the skid and pallet;

t.  As a result of its dangerous, reckless and outrageous failures as above set forth, Defendant, Worldwide, caused the said drum to be punctured;

u.  Otherwise failed to properly and safely inspect, secure and transport the said drums onto the aircraft; and

Case ID: 191001324

v.  As a result of the dangerous, reckless and outrageous failures of Defendant, Worldwide, as above set forth, the said punctured drum caused the escape of its highly toxic, ultrahazardous and abnormally dangerous contents.

90.     As a result of Defendant, Worldwide's aforesaid conduct, Plaintiff, Keturah Winters, was caused to sustain the serious and permanent disabling injuries and other damages set forth above.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendant, Worldwide, and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

## COUNT VIII – KETURAH WINTERS v. DEFENDANT, WORLDWIDE
## STRICT LIABILITY OF DEFENDANT, WORLDWIDE

91.     All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

92.     As a result of its abnormally dangerous activity set forth in all of Plaintiff's preceding allegations herein, Defendant, Worldwide, is strictly liable to Plaintiff, Keturah Winters, under the Restatement of Torts (Second) including, but not limited to, Sections 519 and 520 as follows:

a.  Defendant, Worldwide, is engaged in the business of possessing, using, selling, transferring, transporting, distributing and loading of chemicals known as Alcosphere Lavender Meadows, a chemical which is toxic, ultrahazardous and dangerous;

Case ID: 191001324

b.  The drum set forth above which was punctured contained the aforesaid chemical known as Alcosphere Lavender Meadows;

c.  Defendant, Worldwide, facilitated the transfer of said defective drum and failed to properly inspect the aforesaid drum before transporting, securing, preparing it for loading and loading onto the aforesaid aircraft;

d.  The danger of puncture to the drum containing the toxic, ultrahazardous and dangerous chemical Alcosphere Lavender Meadows during its transport and loading was foreseeable;

e.  Defendant, Worldwide, failed to properly document and label said drum of its toxic, ultrahazardous and dangerous contents;

f.  Defendant, Worldwide, failed to undertake proper precautions to safely load, transport and secure said drum;

g.  Defendant, Worldwide, failed to properly train, instruct and provide necessary information and guidelines to its employees on the proper way or method of using, handling, transporting, inspecting, securing and loading said drums;

h.  Defendant, Worldwide, knew or should have known that the aforesaid drum containing the aforesaid toxic, ultrahazardous and dangerous chemical was unsafe and improper for transport and loading in that it could be easily punctured and lead to the expulsions of the aforesaid contents;

i.  Defendant, Worldwide, knew or should have known that the drums it transported, secured and loaded, were built and composed of faulty materials which could easily be punctured and lead to the expulsion of the toxic, hazardous and dangerous chemicals stored therein;

j.  Defendant, Worldwide, failed to properly warn and advise those persons who may be in the nearby vicinity of said drums of the dangerous risk or possibility of the puncture of said drums which would allow the expulsion of the contents thereof;

k.  Defendant, Worldwide, knew or should have known of the existence of a high degree of risk of harm to persons such as Plaintiff, Keturah Winters, as a result of its activity herein;

l.  Defendant, Worldwide, knew or should have known that the harm to Plaintiff, Keturah Winters, would be great;

m.  Defendant, Worldwide, knew or should have known of the risk of puncture to the said drum and inappropriateness of its aforesaid activity in the securing and loading of said drum;

n.  Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Associations (IATA) rules and regulations;

o.  Failing to comply with all relevant Federal, State and International codes, laws, rules, regulations, and industry standards which are relevant to this matter;

p.  Failing to properly inspect, transport, handle and transport the aforesaid drums;

q.  Failure to safely secure the aforesaid defective, unsafe and abnormally dangerous drums onto the aforesaid pallet;

r.  Failure to properly use the wrapping, side nets and skids to ensure that the said defective drums were safely secured on the aforesaid skid and pallet to prevent any shifting of the said defective drums;

s.  Failure to properly and safely secure the said defective drums onto the skid and pallet;

t.   As a result of its dangerous, reckless and outrageous failures as above set forth, Defendant, Worldwide, caused the said drum to be punctured;

u.   As a result of the dangerous, reckless and outrageous failures of Defendant, Worldwide, as above set forth, the said punctured drum caused the escape of its highly toxic, ultrahazardous and abnormally dangerous contents;

v.   Otherwise failed to properly and safely inspect, secure and transport the said drums onto the aircraft;

w.   The value to the community of the chemical described herein which is a surfactant (a fragrant and/or powder which goes into pain) is greatly outweighed by its dangerous attributes.

93.   The drum and its contents set forth above, which Defendant, Worldwide caused to enter the stream of commerce, were in defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

94.   By reason of Defendant, Worldwide's reckless conduct and its willful and intentional failure to conform to its obligations and duties under the Restatement of the Law of Torts (second), including, but not limited to Sections 519 and 520, as aforesaid, Plaintiff, Keturah Winters, was caused to sustain the serious and permanently disabling personal injuries and other damages set forth above.

95.   Defendant, Worldwide, by engaging in the aforesaid abnormally dangerous, hazardous and/or ultrahazardous activities is strictly liable to Plaintiff, Keturah Winters, without regard to its negligent, reckless or willful conduct for all damages and injuries sustained by Plaintiff,

Case ID: 191001324

even if it had exercised the utmost care to prevent the harm.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendant, Worldwide, and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

## COUNT IX – KETURAH WINTERS V. DEFENDANT, ROSE ANN MCGOVERN-RIMBAUT

### NEGLIGENCE, CARELESSNESS AND RECKLESSNESS OF DEFENDANT, ROSE ANN MCGOVERN-RIMBAUT

96.     All of the above allegations are incorporated by reference and made a part hereof as if fully set forth herein.

97.     In addition to the allegations set forth above, the negligence, carelessness and recklessness of Defendant, Rose Ann McGovern-Rimbaut, as the manager of cargo training, safety and compliance for services on behalf of Worldwide, at Philadelphia International Airport, consisted of the following:

   a. Failing to properly and safely perform her duties as the manager of cargo training which involved, *inter alia,* the shipping, handling, transfer and loading of the said drums containing ultrahazardous, abnormally dangerous and highly toxic chemicals into the City and County of Philadelphia, Pennsylvania;

b. Failing to properly and safely perform her duties as the manager of compliance for services which involved, *inter alia*, the shipping, handling and transfer of cargo containing ultrahazardous, abnormally dangerous and highly toxic chemicals into the City and County of Philadelphia, Pennsylvania;

c. Failing to take all measures to inspect and ensure that the chemical being transferred was safe and was being transferred in containers which were safe;

d. Failing to take all measures to inspect and ensure that the cargo and/or freight being transferred, transported and loaded onto the aforesaid aircraft was performed in a safe manner;

e. Failing to train the employees of Worldwide to properly and safely inspect the aforesaid defective and unsafe drums being transferred, prepare for loading, transporting and loading same in order to avoid the dangerous risk of puncture allowing the escape of its ultrahazardous, abnormally dangerous and highly toxic contents;

f. Failing to ensure that the specific drum involved herein was safely constructed, handled, transported, prepared for loading and loading without danger or risk of being punctured or broken;

g. Permitted the shipping, handling, transfer and loading of said drum when Defendant, Rose Ann McGovern-Rimbaut, knew or should have known that said drum was defective and dangerously constructed and constituted a foreseeable and unreasonable risk and danger of being punctured which would cause the escape of said contents and endanger persons who may be in the vicinity of said occurrence;

h.   Failure to properly document and label said drum of its toxic, ultrahazardous, and dangerous chemical content, as well as the danger of any puncture of said drum as a result of its faulty and unsafe construction;

i.   Failure to take the necessary and proper precautions to prevent the puncture of said drum while being transported or loaded onto subsequent carriers or aircraft;

j.   Failure to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations;

k.   Failure to comply with all relevant Federal, State and International codes, laws, rules, regulations and industry standards which are relevant to this matter; and

l.   Failure to exercise reasonable care in the transport, securing and loading of the said drum containing the toxic, ultrahazardous and abnormally dangerous chemicals.

98.   As a result of Defendant, Rose Ann McGovern-Rimbaut's aforesaid conduct, Plaintiff, Keturah Winters, was caused to sustain the serious and permanent disabling injuries and other damages set forth above.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendant, Rose Ann McGovern-Rimbaut, and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

**COUNT X – KETURAH WINTERS V. DEFENDANT, ROSE ANN MCGOVERN-RIMBAUT**

**STRICT LIABILITY OF DEFENDANT, ROSE ANN MCGOVERN-RIMBAUT**

99.     All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

100.     As a result of her abnormally dangerous activity set forth in all of Plaintiff's preceding allegations herein, Defendant, Rose Ann McGovern-Rimbaut, is strictly liable to Plaintiff Keturah Winters under the Restatement of Torts (Second) including, but not limited to, Sections 519 and 520 as follows:

  a.  Defendant, Rose Ann McGovern-Rimbaut, at all times relevant herein was engaged in the business of possessing, using, selling, transferring, transporting, distributing and loading of chemicals known as Alcosphere Lavender Meadows, a chemical which is toxic, ultrahazardous and dangerous;

  b.  The drum set forth above which was punctured contained the aforesaid chemical known as Alcosphere Lavender Meadows;

  c.  Defendant, Rose Ann McGovern-Rimbaut, failed to properly inspect or label the aforesaid defective and dangerous drum before transporting, securing, preparing it for loading and loading onto the aforesaid aircraft;

  d.  The danger of puncture to the drum containing the toxic, ultrahazardous and dangerous chemical Alcosphere Lavender Meadows during its transport and loading was foreseeable;

  e.  Defendant, Rose Ann McGovern-Rimbaut, failed to properly document and label said drum of its toxic, ultra hazardous and dangerous contents;

f.  Defendant, Rose Ann McGovern-Rimbaut, failed to undertake proper precautions to safely load, transport and secure said drum;

g.  Defendant, Rose Ann McGovern-Rimbaut, failed to properly train, instruct and provide necessary information and guidelines to Defendant, Worldwide's employees on the proper and safe way or method of using, handling, transporting, inspecting, securing and loading said drums;

h.  Defendant, Rose Ann McGovern-Rimbaut, knew or should have known that the aforesaid drum containing the aforesaid toxic, ultrahazardous and dangerous chemical was unsafe and improper for transport and loading in that it could be easily punctured and lead to the expulsion of the aforesaid contents;

i.  Defendant, Rose Ann McGovern-Rimbaut, knew or should have known that the aforesaid drums which were transported, secured and loaded, were built and composed of faulty materials which could easily be punctured ad lead to the expulsion of the toxic, hazardous and dangerous chemicals stored therein;

j.  Defendant, Rose Ann McGovern-Rimbaut, failed to properly warn and advise those persons who may be in the nearby vicinity of said drums of the dangerous risk or possibility of the puncture of said drums which would allow the expulsion of the contents thereof;

k.  Defendant, Rose Ann McGovern-Rimbaut, knew or should have known of the existence of a high degree of risk of harm to persons such as Plaintiff, Keturah Winters, as a result of its activity herein;

l.   Defendant, Rose Ann McGovern-Rimbaut, knew or should have known that the harm to Plaintiff, Keturah Winters, would be great;

m.   Defendant, Rose Ann McGovern-Rimbaut, knew or should have known of the risk of puncture to the said drum and inappropriateness of its aforesaid activity in the securing, transporting and loading of said drum;

n.   The value of the community of the chemical described herein which is a surfactant (a fragrant and/or powder which goes into paint) is greatly outweighed by its dangerous attributes;

o.   Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations; and

p.   Failing to comply with all relevant Federal, State, and International codes, laws, rules, regulations, and industry standards which are relevant to this matter.

101.   The drum and its contents set forth above, placed into the stream of commerce by Defendant, Rose Ann McGovern-Rimbaut, were in defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

102.   As a result of the foregoing Defendant, Rose Ann McGovern-Rimbaut, is strictly liable to the Plaintiff.

103.   By reason of Defendant, Rose Ann McGovern-Rimbaut's reckless conduct and her willful and intentional failure to conform to her obligations and duties under the Restatement of the Law of Torts (Second), including, but not limited to Sections 519 and 520, Plaintiff, Keturah

Winters, was caused to sustain the serious and permanently disabling personal injuries and other damages set forth above.

104.    Defendant, Rose Ann McGovern-Rimbaut, by engaging in the aforesaid abnormally dangerous, hazardous and/or ultrahazardous activities is strictly liable to Plaintiff, Keturah Winters, without regard to her negligent, reckless or willful conduct for all damages and injuries sustained by Plaintiff, even if she had exercised the utmost care to prevent harm.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendant, Rose Ann McGovern-Rimbaut, and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

### COUNT XI - KETURAH WINTERS V. DEFENDANTS, JOHN DOE 1-10/ ABC CORPORATIONS 1-10

### NEGLIGENCE, CARELESSNESS AND RECKLESSNESS OF DEFENDANTS JOHN DOE 1-10 AND ABC CORPORATIONS 1-10

105.    All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

106.    The negligence, carelessness, and recklessness of Defendants, John Doe 1-10/ ABC Corporations 1-10, directly and by and through its agents, servants and/or employees, consisted of the following in addition to the allegations set forth above:

    a.    Failure to inspect the condition and safety of said drum prior to its transportation;

    b.    Transporting, permitting and facilitating the transfer of the said drum when said Defendants   knew or should have known that the fiber materials used in the construction of said drum could be easily punctured which would allow the escape

of its contents consisting of the ultrahazardous, abnormally dangerous and toxic chemicals;

c.  Failing to properly place, inspect, maintain, repair or reconstruct the drums in order to prevent the possibility of any puncture to said drums and the release of their toxic, hazardous and abnormally dangerous chemicals;

d.  Failing to safely load said drum for transport;

e.  Failing to properly place, inspect, maintain and/or repair the drums in order to prevent the possibility of any puncture to said drums and the release of their toxic, hazardous and abnormally dangerous chemicals;

f.  Failing to safely transport, secure and load said drum when said Defendants knew or should have known of the dangerous and harmful effects of the contents of said drum should it be punctured and expel the said toxic, ultrahazardous, abnormally dangerous and toxic chemicals;

g.  Handling, using and transporting said drum containing the said highly toxic, ultrahazardous and abnormally dangerous chemical when said Defendants knew or should have known of its defective construction and the propensity and risk of said drum being punctured;

h.  Failing to properly document and label the said defective and unsafe drums of the great dangers of puncture, especially when their contents contained ultrahazardous, abnormally dangerous and toxic chemicals;

i.  Failing to notify and warn the subsequent users, handlers and transporters of said drums of the danger of puncture which would cause the escape of its ultrahazardous, abnormally dangerous and toxic chemicals;

j.  Failing to properly notify and warn the subsequent users, handlers and transporters of said drums of the harmful and dangerous risks and consequences to persons who might be exposed to, inhale or ingest the ultrahazardous, abnormally dangerous and toxic chemicals should the drum be punctured;

k.  Failing to properly document, warn, and advise those persons who may be in the nearby vicinity of said drums of the dangerous risk or possibility of the puncture of said drums which would allow the expulsion of the contents thereof;

l.  Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Association (IATA) rules and regulations;

m.  Failing to comply with all relevant Federal, State and International codes, laws, rules, regulations, and industry standards which are relevant to this matter;

n.  Failing to exercise reasonable care in the use, construction, packaging, labeling, handling, transport, securing and loading of the said drum containing the toxic, ultrahazardous, and abnormally dangerous chemicals;

o.  Failing to properly train, instruct, and provide necessary information and guidelines to its employees on the proper way or method of using, handling, inspecting, securing and transporting said drums;

p.  Failing to properly inspect, transport, handle and load the aforesaid drums;

q.  Failure to safely secure the aforesaid defective, unsafe and abnormally dangerous drums onto the aforesaid pallet;

r.  Failure to properly use, place and secure the wrapping, side nets and skids to ensure that the said defective drums were safely secured on the aforesaid skid and pallet to prevent any shifting of the said defective drums;

s.  Failure to properly and safely secure the said defective drums onto the skid and pallet;

t.  As a result of its dangerous, reckless and outrageous failures as above set forth said Defendants caused the said drum to be punctured;

u.  As a result of the dangerous, reckless and outrageous failures of said Defendants as above set forth, the said punctured drum caused the escape of its highly toxic, ultrahazardous and abnormally dangerous contents; and

v.  Otherwise failed to properly and safely inspect, secure and transport the said drums onto the aircraft.

107.  As a result of aforesaid conduct of said Defendants, Plaintiff, Keturah Winters, was caused to sustain the serious and permanent disabling injuries and other damages set forth above.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendants John Doe 1-10/ ABC Corporations 1-10 and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

## COUNT XII – KETURAH WINTERS v. DEFENDANTS, JOHN DOE 1-10/ ABC CORPORATIONS 1-10 STRICT LIABILITY OF DEFENDANTS

108.  All of the above allegations are incorporated herein by reference and made a part hereof as if set forth in full.

109.  As a result of their abnormally dangerous activity set forth in all of Plaintiff's preceding allegations herein, Defendants John Doe 1-10/ ABC Corporations 1-10 are strictly liable

to Plaintiff, Keturah Winters, under the Restatement of Torts (Second) including, but not limited to, Sections 519 and 520 as follows:

    a.   Said Defendants are engaged in the business of manufacturing, possessing, using, selling, transferring, transporting, distributing, handling and loading of chemicals known as Alcosphere Lavender Meadows, a chemical which is toxic, ultrahazardous and dangerous;

    b.   The drum set forth above which was punctured contained the aforesaid chemical known as Alcosphere Lavender Meadows;

    c.   Said Defendants facilitated the transfer of said defective drum and failed to properly inspect the aforesaid drum before transporting, securing, prepare it for loading and loading onto the aforesaid aircraft;

    d.   The danger of puncture to the drum containing the toxic, ultrahazardous and dangerous chemical Alcosphere Lavender Meadows during its transport and loading was foreseeable;

    e.   Said Defendants failed to properly document and label said drum of its toxic, ultrahazardous and dangerous contents;

    f.   Said Defendants failed to undertake proper precautions to safely load, transport and secure said drum;

    g.   Said Defendants failed to properly train, instruct and provide necessary information and guidelines to its employees on the proper way or method of using, handling, transporting, inspecting, securing and loading said drums;

    h.   Said Defendants knew or should have known that the aforesaid drum containing the aforesaid toxic, ultrahazardous and dangerous chemical was unsafe and improper for

Case ID: 191001324

transport and loading in that it could be easily punctured and lead to the expulsions of the aforesaid contents;

i.  Said Defendants knew or should have known that the drums it transported, secured and loaded, were built and composed of faulty materials which could easily be punctured and lead to the expulsion of the toxic, hazardous and dangerous chemicals stored therein;

j.  Said Defendants failed to properly warn and advise those persons who may be in the nearby vicinity of said drums of the dangerous risk or possibility of the puncture of said drums which would allow the expulsion of the contents thereof;

k.  Said Defendants knew or should have known of the existence of a high degree of risk of harm to persons such as Plaintiff, Keturah Winters, as a result of its activity herein;

l.  Said Defendants knew or should have known that the harm to Plaintiff, Keturah Winters, would be great;

m.  Said Defendants knew or should have known of the risk of puncture to the said drum and inappropriateness of its aforesaid activity in the securing and loading of said drum;

n.  Failing to conform to the Dangerous Goods Regulations set forth by the International Air Transport Associations (IATA) rules and regulations;

o.  Failing to comply with all relevant Federal, State and International codes, laws, rules, regulations, and industry standards which are relevant to this matter;

p.  Failing to properly inspect, transport, handle and transport the aforesaid drums;

q.  Failure to safely secure the aforesaid defective, unsafe and abnormally dangerous drums onto the aforesaid pallet;

r.  Failure to properly use, place and secure the wrapping, side nets and skids to ensure that the said defective drums were safely secured on the aforesaid skid and pallet to prevent any shifting of the said defective drums;

s.  Failure to properly and safely secure the said defective drums onto the skid and pallet;

t.  As a result of its dangerous, reckless and outrageous failures as above set forth, said Defendants caused the said drum to be punctured;

u.  As a result of the dangerous, reckless and outrageous failures of said Defendants as above set forth, the said punctured drum caused the escape of its highly toxic, ultrahazardous and abnormally dangerous contents;

v.  Otherwise failed to properly and safely inspect, secure and transport the said drums onto the aircraft;

w.  The value to the community of the chemical described herein which is a surfactant (a fragrant and/or powder which goes into pain) is greatly outweighed by its dangerous attributes.

110.    The drum and its contents set forth above were in defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

Case ID: 191001324

111.    By reason of said Defendants' reckless conduct and their willful and intentional failure to conform to their obligations and duties under the Restatement of the Law of Torts (second), including, but not limited to Sections 519 and 520, as aforesaid, Plaintiff, Keturah Winters, was caused to sustain the serious and permanently disabling personal injuries and other damages set forth above.

112.    Defendants, John Doe 1-10/ ABC Corporations 1-10 by engaging in the aforesaid abnormally dangerous, hazardous and/or ultrahazardous activities are strictly liable to Plaintiff, Keturah Winters, without regard to their negligent, reckless or willful conduct for all damages and injuries sustained by Plaintiff, even if they had exercised the utmost care to prevent the harm.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendants,   John Doe 1-10/ ABC Corporations 1-10 and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

## LOSS OF CONSORTIUM

### PLAINTIFF, ERIC WINTERS V. ALL DEFENDANTS

113.    Plaintiff, Eric Winters, incorporates by reference and makes a part hereof, all of the preceding paragraphs of this Complaint as though the same were set forth at length herein.

114.    Plaintiff, Eric Winters, at all times material hereto was and is the husband of Wife-Plaintiff, Keturah Winters.

115.    By reason of the aforesaid, Husband-Plaintiff has been deprived of the society, companionship, comfort and consortium of Wife-Plaintiff and may be deprived of the same for an indefinite period of time in the future.

116.    By reason of the aforesaid, Husband-Plaintiff has been obliged to expend various sums of money in an effort to treat and cure Wife-Plaintiff of the injuries she sustained in the aforesaid incident and in addition, Husband-Plaintiff may be obliged in the future to expend additional sums of money in an effort to treat and cure Wife-Plaintiff of the injuries she sustained in the aforesaid incident.

WHEREFORE, Plaintiffs, Keturah Winters and Eric Winters, demand judgment against Defendants,   John Doe 1-10/ ABC Corporations 1-10 and all other Defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) in compensatory and punitive damages, plus damages pursuant to Pa. R.C.P. 238, interest and costs, and brings this action to recover the same.

**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**

BY:___/s/ Larry Bendesky_____
        LARRY BENDESKY
        ADAM J. PANTANO
        ROBERT W. ZIMMERMAN
        JORDAN L. HOWELL

        *Attorneys for Plaintiffs*

**SCHWARZ & SCHWARZ, P.C.**

BY:   /s/ Daniel A. Schwarz_____
        DANIEL A. SCHWARZ

        *Attorneys for Plaintiffs*

## VERIFICATION

The averments or denials of fact contained in the foregoing are true based upon the signer's personal knowledge or information and belief. If the foregoing contains averments which are inconsistent in fact, signer has been unable, after reasonable investigation, to ascertain which of the inconsistent averments are true, but signer has knowledge or information sufficient to form a belief that one of them is true. This Verification is made subject to the penalties of the 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

10/15/19
Date

Keturah Winters

## VERIFICATION

The averments or denials of fact contained in the foregoing are true based upon the signer's personal knowledge or information and belief. If the foregoing contains averments which are inconsistent in fact, signer has been unable, after reasonable investigation, to ascertain which of the inconsistent averments are true, but signer has knowledge or information sufficient to form a belief that one of them is true. This Verification is made subject to the penalties of the 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

10/15/19
Date

Eric Winters

EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KETURAH WINTERS, et al. | Civil Action No. |
| Plaintiffs, | |
| v. | |
| AKZO NOBEL SURFACE CHEMISTRY, LLC, et al. | |
| Defendants. | |

**<u>DECLARATION OF ROSE ANNE RIMBAUT</u>**

1.      I am over the age of eighteen, I have personal knowledge of the facts set forth herein, and I am competent to testify to them at trial.

2.      I have been employed by Worldwide Flight Services ("WFS") since 2002, stationed at the Philadelphia International Airport ("PHL").

3.      WFS provides ground handling services to airlines, including cargo handling services.

4.      Cargo that is transported by air must be assembled and packed onto pallets for loading into aircraft.  This is known as "building" pallets.  Each airline has its own rules and regulations governing how to build pallets.

5.      Airlines will outsource the job of building pallets to cargo handling services, such as WFS.

6.      At the time of the incident described in the Complaint (March 24, 2018), WFS had five airline cargo clients at PHL – American Airlines, British Airways, Qatar Airways, Delta Airlines and Alaska Airlines.

7.      WFS conducted independent operations, using two separate facilities at PHL.

8.      For WFS's British Airways Cargo and Qatar Airways Cargo operations, WFS employees would build pallets in WFS's warehouse Building C7 at PHL.

9.      For WFS's American Airlines Cargo operation, a different group of WFS employees would build pallets in the American Airlines' cargo facility in Building C6 at PHL.

10.      The WFS employees who worked for the British Airways Cargo operation were trained to build pallets according to British Airways' rules and regulations, while the employees who worked on the Qatar Airways Cargo operation were trained to build pallets according to Qatar Airlines' rules and regulations.

11.      The separate group of WFS employees who worked for the American Airlines Cargo operation were trained to build pallets according to American Airlines' rules and regulations.

12.      Starting a number of years before March 2018 and continuing through the present, I held the position at WFS of Key Account Manager for British Airways Cargo.

13.     In my position as Key Account Manager for British Airways Cargo, I was responsible for ensuring that the WFS employees working for the British Airways Cargo operation were trained to build pallets in accordance with British Airways' rules and regulations.

14.     I did not in March 2018 and never have worked for WFS's American Airlines Cargo operation.

15.     I have never trained WFS employees to work for the American Airlines Cargo operation.

16.     I am not familiar with American Airlines Cargo's rules and regulations.

17.     I searched the files of WFS's British Airways Cargo operation and could find no record of an incident involving a British Airways Cargo shipment on March 24, 2018.

18.     I do not remember an incident involving a British Airways Cargo shipment on March 24, 2018.

19.     I first learned of the incident described in plaintiffs' Complaint when I received a copy of the Complaint.

20.     According to a publicly-available government report that one can locate by running a search using the Hazmat Incident Report Search Tool on the webpage of the Pipeline and Hazardous Materials Safety Administration, the cargo shipment at issue in this case was an American Airlines Cargo shipment (*see* Exhibit A and excerpts from it below):[1]

---

[1]     The incident report is available through this link:
https://portal.phmsa.dot.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FPublic%20Website%20Pages%2F_portal%2FHazmat%20Incident%20Report%20Search&

| Report Number | Multiple Rows Per Incident | Carrier Reporter Name | Incident Route | Incident City | Incident State | Date Of Incident |
|---|---|---|---|---|---|---|
| E-2018040322 | No | AMERICAN AIRLINES, INC | PHL International Airport | PHILADELPHIA | PA | 3/24/2018 |

**Event Description**

While loading cargo, one fibreboard drum was nicked by the side of the cargo compartment doorway latch mechanism of the forward cargo compartment of the aircraft. The fine powdered substance, which is a surfactant, spilled from the hole created in the side of the drum. The size of the hole was approximately the size of a tennis ball to a baseball. Airline Management was contacted and the Lead Environmental Coordinator contacted a local Environmental Response company to come to PHL airport for cleanup. Miller's Environmental of Philadelphia responded at 21:17 and cleaned up the spilled substance using an industrial vacuum with a Hepa filter. A Ramp employee who was Asthmatic inhaled some of the powder and was transported to the hospital for examination and treatment. She had an adverse reaction to the medications and was admitted to the hospital for 4 days.

21.     In March of 2018 (or at any other time, for that matter), I would have had no involvement whatsoever, either directly or indirectly, with an American Airlines Cargo shipment.  Indeed:

a.   I would not have been responsible, directly or in a supervisory capacity, for scheduling an American Airlines Cargo shipment, and

Page=Hazmat%20Incident%20Report&PageIdentifier=kav0ge6phc5j2g2v&BookmarkState=oc9u1l155ap6bjmmbvgc55msve&options=r

did not do so for the American Airlines Cargo shipment at issue in this case.

b. I would not have been responsible, directly or in a supervisory capacity, for inspecting an American Airlines Cargo shipment, and did not do so for the American Airlines Cargo shipment at issue in this case.

c. I would not have been responsible, directly or in a supervisory capacity, for labeling an American Airlines Cargo shipment, and did not do so for the American Airlines Cargo shipment at issue in this case.

d. I would not have been responsible, directly or in a supervisory capacity, for training or instructing the employees who prepared an American Airlines Cargo shipment, and did not do so for the American Airlines Cargo shipment at issue in this case.

e. I would not have been responsible for supervising the employees who prepared an American Airlines Cargo shipment, and did not do so for the American Airlines Cargo shipment at issue in this case.

f. I would not have been responsible, directly or in a supervisory capacity, for loading an American Airlines Cargo shipment, and did not do so for the American Airlines Cargo shipment at issue in this case.

g.  I would not have been responsible, directly or in a supervisory capacity, for transporting an American Airlines Cargo shipment, and did not do so for the American Airlines Cargo shipment at issue in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the ___14___ day of November, 2019.

Rose Anne Rimbaut

EXHIBIT A

**Instructions:**

Please select only criteria and click on **Apply**.

Failing to enter any search criteria will cause the **Incident Source Database** report a long time to run.

Click on **Apply** link to generate the **Incident Reports Database Search** report.

Click on the **Incident Detailed Report: All fields included in Form 5800.1** link below to view all fields, unfiltered, in a separate window.

Incident Source Data as of **11/11/2019**

---

**Detailed Report**

**PART I - GENERAL INCIDENT INFORMATION:** None

Note: For incidents involving multiple commodities and/or multiple package types, double counting can occur

Use the following link to obtain helpful reference information:

Shipment (Incident) Identification - Please resolve the definition of a serious incident in Fiscal Year 2002. This site uses both definitions

Data Dictionary - Description of the data fields in the reports on this site

Units of Measurement - Description of the units of measure used in the reports on this site

The result set containing incident report(s) has been finalized (Closed) and reportable.

**PART II - GENERAL INCIDENT INFORMATION:** None

3. Date of Incident: From    Between 02/24/2019 - 02/24/2019 (mm/dd/yy) at  None

5. Location of Incident: City:   contains any None   State: PENNSYLVANIA   County: contains any None   Zip Code: contains any None

Incident Route:  contains any None

6. Mode Of Transportation:  None

8. Transportation Phase:  None

9. Carrier/Reporter Name:  contains any None   City:  contains any None   State:  None   Zip Code:  contains any None

11. Shipper/Offeror Name:  contains any None

13. Origin City:  contains any None   State:  None   Zip Code:  None

14. Proper Shipping Name of Hazmat Material:  contains any None

16. Hazardous Class/Division Code:  None

**PART III - PACKAGING INFORMATION:** None

17. Identification Number:  contains any None   State: None   Failed: contains any None

24. Packaging Type:  None

25. Incident Cause: Was Fatal:  contains any None   State: None   Failed: contains any None

**PART IV - CONSEQUENCES:** None

29. Result of Incident:  None

31a. Did the hazardous material cause or contribute to a human fatality?  None   31 Was a major transportation error or facility closed?  None

34. Did the hazardous material cause or contribute to personal injury?  None   37 Was the material involved in a crash or deadliest?  None

OTHER: None

Report Number:  contains any Not-re Serious Incident: None

Combined Code Search:  contains any None   Undeclared Shipment: None

General Package Type: None

---

Incident Detailed Report is an extensive report with all columns from 5800.1 form and could take 5 mins or more to display the results. If you have any questions/concerns regarding this report please [click here](#) to send email

[Click here to download the detailed report](#)

---

**Detailed Report**

Office of Hazardous Materials Safety - Incident Reports Database Search

1 Incident(s) found - Please click on any column header to sort by ascending or descending.

| Report Number | Incident Result Route | Incident City | Incident State | Incident Date Time | Incident Time | Incident Release | Quantity Released | Unit Of Measure | Identification Number | Commodity Long Name | Hazmat Class | Hazmat Class Subsidiary | Total Federal Fatalities | Shipper Name | Origin City | Mode Of Transportation | Identification Markings | Cont 1 Material Of Construction | Cont 1 Packaging Marking | Cont 1 Package Type | Cont 1 Package Capacity Unit | Cont 1 Package Capacity | Cont 1 Material Type | Cont 1 Pkg Shipment Type | Cont 1 Capacity Reported | Cont 1 Capacity Min | Cont 1 Shipment Type | Cont 1 Qty | Other Min Failed | How Failed | Cause Of Event Description | Cause Of Event Failure | Serious Indicator | Serious Bulk Release | Serious Evacuation | Fatalities Indicator | Fatalities Injured | Major Artery Indicator | Major Artery Closed | Reburn Radioactive |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| E-2019000222 | No | PHILADELPHIA, PA | PA | 2/24/2019 | 1600 | 18 | SLB | UN3077 | ENVIRONMENTALLY HAZARDOUS SUBSTANCES, SOLID, N.O.S. | 9 |  | 0 | PHL, AMERICAN AIRLINES INC | PHILADELPHIA, PA | AIR | VALLEY STREAM | Fiberboard |  | Drum |  | 210 SLB |  | Fiberboard or combboard |  |  |  | 13 |  | 0 | Body | Object | While loading cargo, one fiberboard drum was moved by the wheel of the cart... When operation completed, observed a portion of a damaged fiberboard drum that had released... amount of this material... While being unloaded for air shipment... discovered on the Lead Environmental Coordinator notes the drum had been compromised... the employee discovered small amount of the material on the ULD... The material in the drum continued to leak. It was determined the material should be repackaged into a new overpack and repacked. The decision was made to remove and re-pack the material on the outside... for arrival and hold for further inspection and was admitted to the hospital for x-rays. | Yes |  | No | No | No |  | Yes | No | No |

EXHIBIT 3

## AFFIDAVIT OF SERVICE



*Filed and Attested by the Office of Judicial Records 29 OCT 2019 03:14 pm G. IMPERATO*

**Commonwealth of Pennsylvania**                    **County of Philadelphia**                    Common Pleas Court

Case Number: OCTOBER 2019  1324

Plaintiff:
**KETURAH WINTERS et al**
vs.
Defendant:
**AKZO NOBEL SURFACE CHEMISTRY, LLC A/K/A AKZO NOBEL, INC., A/K/A AKZO NOBEL COATINGS, INC et al**

For: SALTZ MONGELUZZI BARRETT & BENDESKY

Received by COURT HOUSE LEGAL SERVICES, INC. to be served on **WORLDWIDE FLIGHT SERVICES, 8808 LITTLE TINICUM RD., PHILADELPHIA, PA 19153**. I, ___Ed   O'Brien___, being duly sworn, depose and say that on the __19__ day of __Oct.__, 2019 at __10:46a__ m., executed service by delivering a true copy of the **COMPLAINT** in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as _____.

(X) CORPORATE SERVICE: By serving _Elizabeth McElreavey_ as _Authorized Agent_.

( ) OTHER SERVICE: As described in the Comments below by serving _____ as _____.

( ) NON SERVICE: For the reason detailed in the Comments below.

**COMMENTS:** _____

_____

_____

_____

Age _40_ Sex M (F) Race _White_ Height _5-4_ Weight _150_ Hair _Blonde_ Glasses (Y) N

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the _21_ day of _Oct  2019_ by the affiant who is personally known to me.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
Christopher J. Mullen, Notary Public
Philadelphia County
My commission expires May 27, 2023
Commission number 1227476

_____
PROCESS SERVER # _____
Appointed in accordance with State Statutes

**COURT HOUSE LEGAL SERVICES, INC.**
**112 Haddontowne Ct, Ste. 304**
**Cherry Hill, NJ 08034**
**(856) 428-4700**

Our Job Serial Number: 2019009091
Ref: WINTERS 2019-348

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.1c

Case ID: 191001324

EXHIBIT 4

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KETURAH WINTERS and ERIC WINTERS

            Plaintiffs,

    v.

AKZO NOBEL SURFACE CHEMISTRY,
LLC a/k/a AKZO NOBEL, INC., a/k/a AKZO
NOBEL COATINGS, INC. and BTX
GLOBAL LOGISTICS, and BILL
TAMPANO, and WORLDWIDE FLIGHT
SERVICES, and ROSE ANNE MCGOVERN-
RIMBAUT

            Defendants.

Civil Action No.

## CONSENT TO REMOVAL

     Defendant Nouryon Surface Chemistry, LLC, improperly named as Akzo Nobel Surface Chemistry, LLC ("Nouryon Surface Chemistry"), hereby consents to the removal of the action captioned *Keturah Winters, et al. v. Akzo Nobel Surface Chemistry, LLC, et al.*, No. 191001324, from the Philadelphia County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania. Nouryon Surface Chemistry's consent is limited to the removal of this action, and is not, and should not be construed as, consent or submission to a Pennsylvania court's jurisdiction over it, or a waiver of any defense or objection it may have.

*Eli Granek*
_____
Eli Granek, Esq.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
*Counsel for Nouryon Surface Chemistry, LLC*

Dated:  November 11, 2019

EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KETURAH WINTERS and ERIC WINTERS <br><br> Plaintiffs, <br><br> v. <br><br> AKZO NOBEL SURFACE CHEMISTRY, LLC a/k/a AKZO NOBEL, INC., a/k/a AKZO NOBEL COATINGS, INC. and BTX GLOBAL LOGISTICS, and BILL TAMPANO, and WORLDWIDE FLIGHT SERVICES, and ROSE ANNE MCGOVERN-RIMBAUT <br><br> Defendants. | Civil Action No. |

### CONSENT TO REMOVAL

Defendants Bacarella Transportation Services, Inc. d/b/a BTX Global Logistics (incorrectly named as BTX Global Logistics) (hereinafter "BTX") and Bill Timpano (incorrectly named as Bill Tampano) (hereinafter "Timpano"), on their own behalf, by and through their undersigned counsel, hereby consent to the removal of the action captioned *Keturah Winters, et al. v. Akzo Nobel Surface Chemistry, LLC, et al.*, No. 191001324, from the Philadelphia County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania.  The consent of BTX and Timpano is limited to the removal of this action and is not, and should not be construed as, consent or submission to a Pennsylvania state or federal court's jurisdiction over them, or a waiver of any defense or objection they may have.

Dated:  November 13, 2019

_Raymond A. Selvaggio, Esq._
Raymond A. Selvaggio, Esq.
Pezold, Smith, Hirschmann & Selvaggio, LLC
120 Main Street
Huntington, New York 11743
*Counsel for Bacarella Transportation*
*Services, Inc. and Bill Timpano*

EXHIBIT 6

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KETURAH WINTERS and ERIC WINTERS

          Plaintiffs,

      v.

AKZO NOBEL SURFACE CHEMISTRY, LLC a/k/a AKZO NOBEL, INC., a/k/a AKZO NOBEL COATINGS, INC. and BTX GLOBAL LOGISTICS, and BILL TAMPANO, and WORLDWIDE FLIGHT SERVICES, and ROSE ANNE MCGOVERN-RIMBAUT

          Defendants.

Civil Action No.

### CONSENT TO REMOVAL

      Defendant Rose Anne McGovern-Rimbaut, on her own behalf and by and through her undersigned counsel, hereby consents to the removal of the action captioned *Keturah Winters, et al. v. Akzo Nobel Surface Chemistry, LLC, et al.*, No. 191001324, from the Philadelphia County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania. Ms. Rimbaut's consent is limited to the removal of this action and is not an acknowledgement that she was properly joined or a waiver of any defense she may have.

Stephen J. Shapiro, Esq.
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
*Counsel for Worldwide Flight Services and Rose Anne McGovern-Rimbaut*

Dated:   11/15/19

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 15, 2019, the foregoing Notice of Removal

was served on the following persons by first class mail, postage prepaid:

Larry Bendesky, Esq.
Adam J. Pantano, Esq.
Robert W. Zimmerman, Esq.
Jordan L. Howell, Esq.
Saltz, Mongeluzzi, Barrett & Bendesky, P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
*Counsel for Plaintiffs*

Daniel A. Schwartz, Esq.
Schwartz & Schwartz, P.C.
One Liberty Place – 51st Floor
1650 Market Street
Philadelphia, PA 19103
*Counsel for Plaintiffs*

Eli Granik, Esq.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
*Counsel for Akzo*

Raymond A. Selvaggio, Esq.
Pezold, Smith, Hirschmann & Selvaggio, LLC
120 Main Street
Huntington, New York 11743
*Counsel for BTX and Bill Tampano*

/s/ Stephen J. Shapiro
Stephen J. Shapiro