IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KETURAH WINTERS, *et al.*,<br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>AKZO NOBEL SURFACE CHEMISTRY, LLC,<br>*et al.*,<br>　　　　　　Defendants. | CIVIL ACTION<br>No. 19-5398 |

**MEMORANDUM OPINION**

**SCHMEHL, J.**   /s/ JLS                                                                                         APRIL 13, 2021

　　　The Court sits in diversity jurisdiction to decide whether to remand the case based upon plaintiffs' addition of a non-diverse party, or to sever and remand the claims against the non-diverse party to state court. Under 28 U.S.C. section 1447(e), the circumstances of the case dictate that all claims against the non-diverse party shall be severed and remanded to state court.

FACTUAL BACKGROUND

　　　The case arises out of Plaintiff Keturah Winters' alleged exposure to the chemical Alcosphere Lavender Meadows, "a highly toxic, ultrahazardous, and abnormally dangerous chemical, in powder form." (ECF #22, ¶ 27.) Winters was employed by American Airlines as a Fleet Service Agent at the Philadelphia International Airport. (*Id.*) On March 24, 2018, while Winters was working in that capacity, a fiber drum containing Alcosphere Lavender Meadows, which allegedly lacked the proper liner, made contact with a "'pull-in-hook' roller" and was punctured. (*Id.* ¶¶ 27-31.)

　　　As a result, "the highly toxic, ultrahazardous, and abnormally dangerous powdered chemical contents of the drum were . . . expelled and permeated the vicinity of the aircraft where

Plaintiff, Keturah Winters[,] was situated . . ." exposing her to the substance. (*Id*. ¶ 32.) Consequently, Winters sustained serious and permanent injuries, including "respiratory distress, acute asthma exacerbation, dyspnea, mucosal edema, chronic rhinitis, Reactive Airways Dysfunction Syndrome (RADS) secondary to toxic exposure, mental and emotional distress . . . an anxiety reaction and shock to her nerves and nervous system; and other neurological, psychological[,] and respiratory injuries, the full extent of which is yet to be determined." (*Id*. ¶ 73.)

Presently, the plaintiffs move to remand the case to Pennsylvania state court after they amended their complaint to add three additional defendants because one of which, BDP International Inc., is of non-diverse citizenship. The defendants move to strike plaintiffs' Amended Complaint and argue that the amendment was done without right or leave of Court in violation of the Federal Rules of Civil Procedure, and alternatively, the amendment was done for the purpose of defeating diversity jurisdiction in violation of 28 U.S.C. section 1447(e).

The procedural facts leading up to the present motions decide their outcomes. Plaintiffs, who are husband and wife, originally filed this case on September 21, 2018, in the Pennsylvania Court of Common Pleas of Philadelphia. Months later, a defendant removed the case to federal court under diversity jurisdiction, but just days after removal, plaintiffs voluntarily dismissed the case.

Nearly a year later, plaintiffs filed the present case in the Pennsylvania Court of Common Pleas of Philadelphia. This case included three new defendants in which plaintiffs claimed two were citizens of Pennsylvania, thus, diversity jurisdiction did not exist. However, contrary to plaintiffs' claims, one of the two defendants was simply not a Pennsylvania resident. The other defendant was an individual Pennsylvania resident employed by one of the defendant-entities, was purportedly not involved in the accident, and could not be held liable under vicarious

liability. (ECF #36, at 4.) Because of this, a defendant removed the case to this Court, and claimed that the one non-diverse party was fraudulently added for the sole purposes of defeating diversity jurisdiction. Soon after, plaintiffs voluntarily dismissed the non-diverse individual defendant from the case, thereby consenting to diversity jurisdiction.

Shortly after removal, defendant Akzo/Nouryon filed a Motion to Dismiss with an exhibit attached that claimed that three other entities were involved in the shipping and transportation of the product at issue. After receiving this Motion to Dismiss on February 18, 2020, plaintiffs amended their complaint to add the three entities on March 3, 2020, and then filed the present Motion to Remand on March 16, 2020. Correspondingly, defendant Worldwide Flight Services filed a Motion to Strike the Amended Complaint on March 16, 2020. Collectively, the defendants argue that the amendment came more than twenty-one days after the first responsive pleading in violation of Federal Rule of Civil Procedure 15 and 21, and alternatively, plaintiffs failed to obtain this Court's permission to amend their complaint which was required since the amendment would deprive the Court of jurisdiction.

ANALYSIS

I. Defendant's Motion to Strike Plaintiff's Complaint.

Under Federal Rule of Civil Procedure 15, a plaintiff may amend their complaint twenty-one days after "service," "service of a responsive pleading," a "motion under Rule 12(b), (e), or (f), whichever is earlier," or "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)(2).

Defendants collectively claim that plaintiffs failed to comply with Rule 15, therefore, the Amended Complaint should be stricken in its entirety. While defendants appear to be correct in that plaintiffs should have requested leave to amend their complaint, I will not strike the complaint in its entirety for this failure. Instead, I will address plaintiffs' amendment as if they

had requested leave to amend their complaint while keeping in mind that the plaintiffs failed to make such a request. Therefore, I will address defendants' concerns with the amendment while also addressing plaintiff's Motion to Remand because both Motions ultimately require an analysis under 28 U.S.C. section 1447(e).

II.     Plaintiff's Motion to Remand.

Under 28 U.S.C. section 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court." 28 U.S.C. § 1447(e). The Third Circuit adopted the Fifth Circuit's approach set out in *Hensgens* which states that courts should scrutinize amendments that would destroy diversity more closely than ordinary amendments and consider the following factors: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for the amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other equitable reasons. *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 839-41 (3d Cir. 2014) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

Under the first factor, ample circumstantial evidence strongly suggests that plaintiffs are attempting to destroy diversity jurisdiction with their Amended Complaint. Plaintiffs' original complaint was filed in state court, removed to federal court under diversity jurisdiction, and then plaintiffs voluntarily dismissed the case. Plaintiffs' second complaint added two non-diverse parties, however, one party was actually not a Pennsylvania citizen and the other party was voluntarily dismissed after defendants claimed that the party was added solely to defeat diversity jurisdiction. Thereafter, diversity jurisdiction clearly existed.

Now, plaintiffs amended their complaint without permission of the Court despite the fact that the amendment would deprive the Court of jurisdiction. Additionally, plaintiffs claim that

the new parties had an important role in handling the product at issue, but plaintiffs are only discovering them nearly two years after the incident. Lastly, the only non-diverse party in the Amended Complaint, BDP, purportedly did not touch or handle the product in any way. BDP only served as a vendor who hired other entities to move the product. Thus, any claims against BDP for mishandling the product are tangential. Accordingly, ample evidence strongly suggests that plaintiffs are attempting to destroy diversity jurisdiction with their Amended Complaint.

The second factor asks whether plaintiffs have been dilatory in asking for the amendment. First, it is noted that plaintiffs never asked for the amendment, but simply just filed their Amended Complaint that would deprive the Court of jurisdiction. Nevertheless, plaintiffs state that they discovered the three new defendants when Akzo/Nouryon filed a Motion to Dismiss on February 18, 2020, and plaintiffs filed their Amended Complaint on March 3, 2020.

Plaintiffs were not dilatory in amending their complaint if February 18th was truly the date in which they discovered the new defendants. *Marker v. Chesapeake Life Ins. Co.*, 2011 WL 2670004, at *3 (E.D. Pa. July 6, 2011) (stating that being dilatory depends on the nature and timing of the proposed amendment). However, defendants argue that plaintiffs should have known of these defendants through pre-complaint discovery under Pennsylvania Rule of Civil Procedure 4003.8, or by conducting a simple reasonable investigation. Plaintiffs filed their original complaint in Pennsylvania state court in September 2018, but did not discover these defendants who, according to plaintiffs, had an important role in handling the product at issue until receiving Akzo/Nouryon's Motion to Dismiss in March 2020. It is evident that plaintiffs could have, and likely should have, discovered the three new defendants at a much earlier date than Akzo's Motion to Dismiss. *See Camilli v. Wal-Mart Stores, Inc.*, 2019 WL 1432481, *3 (E.D. Pa. March 28, 2018) (citing *Gilberg v. Stephan Co.*, 24 F. Supp. 2d 355, 358 (D.N.J. 1998)

(finding that plaintiff's use of Doe defendants in original complaint indicated intent to join real defendants once their identities were known, rather than intent to destroy diversity).

Still, this factor does not necessarily favor one side over the other given how quickly the plaintiffs amended their complaint after the Motion to Dismiss, the fact that plaintiffs should have discovered these defendants at an earlier time, and that plaintiffs amended their complaint without permission of the Court.

The Third factor asks whether plaintiffs will be *significantly* injured if amendment is not permitted. Plaintiffs have already initiated a state court action against the three new defendants. While it would be more efficient to have the cases in one forum, having the cases in two forums does not "significantly" injure plaintiffs in obtaining the justice and remedies they seek. *See Walicek v. Mut. Protective Ins. Co.*, 2009 U.S. Dist. Lexis 19037 (S.D. Tex. Mar. 4, 2009) (holding and citing cases that have found that pursuing separate claims in federal and state court is not a significant injury under *Hensgens*). Additionally, the claims against the non-diverse party, BDP, are tangential. Purportedly, BDP did not touch or handle the product in anyway. BDP only served as a vendor who hired other entities to move the product. Lastly, the entities in this case could satisfy any judgment that the plaintiffs may ultimately obtain. Accordingly, plaintiffs will not be significantly injured by having to prosecute this federal case and a state law case against BDP.

The last factor asks me to consider other various equitable reasons such as "the efficient use of judicial resources, the effect remand will have on the defendant, and the expertise of the court relative of the applicable law." *Aldorasi v. Crossroads Hosp. & Mgmt. Co. LLC*, 344 F. Supp. 3d 814, 828 (E.D. Pa. 2018). Most of the defendants in the case are not Pennsylvania citizens, so they claim that they have a strong interest in a federal forum. As detailed above, plaintiffs are slightly prejudiced if they must prosecute a case in state court while also

6

prosecuting this case in federal court. Lastly, this Court is well versed in Pennsylvania law so one forum is not favored over the other due to choice of laws. This factor is neutral.

CONCLUSION

The analysis under 28 U.S.C. section 1447(e) requires that the Court scrutinize amendments that would deprive the Court of jurisdiction. *Hayden*, 586 Fed. App'x at 840. Two of the factors, particularly plaintiffs' intent in the amendment and whether plaintiffs will be significantly injured, favor that the Court nullifies the amendment or severs and remands the case against the non-diverse party. Accordingly, for the reasons set out above, the interests of justice are best served if the Court permits the amendment but severs and remands the claims against the non-diverse party, BDP, to state court.

**BY THE COURT:**

/s/ Jeffrey L. Schmehl
Jeffrey L. Schmehl, J.